In re Charles W. GRAHAM aka C.W. Graham aka Charles William Graham aka C.W. Graham, M.D. fdba Charles W. Graham, M.D. Ltd., PC fdba Operated Farm, Debtor.

Bankruptcy No. 81–04153.

United States Bankruptcy Court, N.D. Iowa.

April 11, 1983.

A. Frank Baron, Sioux City, Iowa, for applicant Patsy Jean Smith.

Rodney Kubat, Des Moines, Iowa, for debtor.

Donald H. Molstad, Sioux City, Iowa, for Trustee, Edward F. Samore.

Findings of Fact, Conclusions of Law, and ORDERS re Application for Sale of Debtor's Homestead, with Memorandum.

WILLIAM W. THINNES, Bankruptcy Judge.

On October 21, 1981, hearing on the Application for Sale of Debtor's Interest in Homestead was held on proper notice to all interested parties.

The parties agreed that all relevant facts were in the record, and they recited to the Court those facts upon which they agreed. The Court set time for the filing of briefs and took the matter under advisement. The Court, now being fully advised, makes the following Findings of Fact, Conclusions of Law, and Orders.

## FINDINGS OF FACT

Applicant/Patsy Jean Smith and Debtor/Charles W. Graham were married on December 8, 1963. That marriage was dissolved on June 5, 1980, by Decree of the Iowa District Court in and for Cherokee County. The Decree incorporated a stipulation agreement between the parties that provided for a division of property and assumption of debts. There are two paragraphs of that stipulation agreement which are particularly relevant to this proceeding. Paragraph 11 provides that certain marketable securities listed therein will become the property of Dr. Graham, the Debtor in this Chapter 7 proceeding. Paragraph 21 of that agreement states that Dr. Graham shall hold Patsy Graham, now Patsy Smith/Applicant herein, harmless for certain debts and that Dr. Graham should secure those debts by various means. There are six subparagraphs of paragraph 21 which impose various duties upon Dr. Graham; the relevant subparagraph for this proceeding is subparagraph (e) which provides that Dr. Graham shall sell the marketable securities listed in paragraph 11 and apply the proceeds to the outstanding balance of the debts, and also apply the cash value of the existing life insurance against those debts. The parties have stipulated that Debtor/Graham sold the marketable securities and life insurance referred to in paragraph 21 of the stipulation, but that he did not apply the proceeds to the debts as directed by that paragraph. The parties further agreed that Debtor/Graham used the proceeds to make a down payment on a homestead. The parties further agreed that Applicant/Smith is a judgment creditor of Debtor/Graham as a result of the previously mentioned dissolution decree, that the judgment was entered prior to the Debtor's acquisition of his current homestead, that said homestead has not yet been set aside as exempt, that the judgment was not filed in the county wherein the homestead is located, and that the Debtor has not as yet received a discharge.

Debtor/Graham filed his Chapter 7 Petition with this Court on April 24, 1981, and Applicant/Smith filed her Application for Sale of the Debtor's Homestead on September 25, 1981, claiming that Debtor's homestead could be sold to satisfy her pre-existing debt. Many adversary proceedings have been filed in this case, and most are yet to be resolved.

## CONCLUSIONS OF LAW

1. A constructive trust should be imposed on the homestead of the Debtor, to the extent of the value of the securities and life insurance proceeds used in purchasing the homestead, for the benefit of Applicant/Smith with regard to the debts enu-

merated in paragraph 21 of the Stipulation Agreement incorporated in the Dissolution Decree of June 5, 1980.

2. The Application for Sale of the Debtor's Homestead should be denied at this time because of various matters that are pending and because the interest of Applicant/Smith has been adequately protected by imposition of the constructive trust.

3. The Debtor should make an accounting of the value of the proceeds received from sale of the securities and life insurance so that the extent of the interest of Applicant/Smith in the homestead of the Debtor may be accurately determined.

## ORDERS

IT IS THEREFORE ORDERED that the Debtor shall hold his homestead in trust for the benefit of Patsy Jean Smith to the extent of her interest in that property which is legally described as:

A part of Lot 6, NE¼, NE¼, Section 22, Township 78, Range 40, Ida County, Iowa.

IT IS FURTHER ORDERED that within ninety (90) days of the date of this Order the Debtor shall file with this Court and deliver to Patsy Jean Smith a full and complete accounting of the monies received as the result of the sale of the various securities and life insurance listed in paragraph 21 of the stipulation agreement entered into by the parties and incorporated into the dissolution decree of June 5, 1980.

IT IS FURTHER ORDERED that the Application for Sale of Debtor's Homestead is denied.

## MEMORANDUM

The facts in this case are not in dispute. Prior to the filing of his Bankruptcy Petition, Debtor/Graham was Ordered to sell certain securities and apply the proceeds against certain debts, pursuant to a State Court Decree dissolving the marriage between him and Applicant/Patsy Jean Smith. Debtor/Graham sold the securities as Ordered, but did not apply the proceeds in the manner required, choosing instead to use the monies to purchase certain real estate which he now seeks to protect under Iowa's homestead exemption. § 561.16, *Code of Iowa*. The central issue before the Court, and the matter on which the parties disagree, is the legal effect of the actions taken by Debtor/Graham.

The Applicant/Smith points out that the Debtor purchased his home with proceeds that the State Court had specifically earmarked for payment of a debt on which she was personally liable; by doing that, she argues, the Debtor has misappropriated funds, to his own benefit, which should have inured to her benefit. She contends that a constructive trust should be imposed upon the Debtor's homestead, and that the homestead be sold to satisfy her debt pursuant to § 561.21, *Code of Iowa*. The Debtor's position is that the Dissolution Decree created a debt that is dischargeable in Bankruptcy because it was part of a property settlement award. The Debtor notes that the Dissolution Decree specifically provided that the Debtor would become owner of the marketable securities that were to be sold. As a result of this, the Debtor argues, Applicant/Smith did not have any property rights in the securities or in the proceeds, and thus she has no interest in his homestead which would warrant the imposition of a constructive trust. The Debtor also argues that his homestead may not be sold pursuant to *Iowa Code* § 561.21 unless a Bankruptcy Court determines that the debt he owes to Applicant/Smith is nondischargeable. Therefore, he claims that the Court should not rule on the Application for Sale until such time as all dischargeability questions have been resolved.

The Court agrees with Applicant/Smith that she has an interest in the Debtor's homestead, but declines to force the sale of the homestead at this time. It appears that Applicant/Smith had a lien in the marketable securities sold by Debtor/Graham, and that the lien can, by the Debtor's own admissions, be traced to the Debtor's homestead via the proceeds from the sale of those securities. It further appears that such a lien would not be avoidable by the

Debtor. *See, In re Adams* and *In re Wicks* discussed *infra.* Regardless of the finer legal points regarding the lien question, however, it would clearly be inequitable to allow the Debtor in this case to reap the benefits of the securities when the State Court obviously intended that they be used to retire a debt on which both the Debtor and the Applicant were liable. It would be unconscionable to let the Debtor alone reap the benefits of property that was meant to inure to the benefit of both the Debtor and the Applicant.[1]

## I. LIEN

■ The Dissolution Decree between Applicant and Debtor specifically provided that the Debtor would *secure* the "Hold Harmless" debt in a number of ways; one way was to sell certain marketable securities and life insurance, and apply the proceeds to the debt. Even though the Decree specified that Debtor/Graham would be the owner of the marketable securities in question, it is obvious that the Court intended for Applicant/Smith to have a lien in the securities and/or the proceeds to insure that Debtor/Graham would perform his duties according to the stipulated agreement. Debtor/Graham has admitted that he sold the securities and life insurance and used the proceeds to purchase the home which he now seeks to protect as his homestead. Any lien that existed in the securities or proceeds is, therefore, easily traceable into the Debtor's homestead.

■ The Debtor has put forth some persuasive arguments for the proposition that any lien Patsy Smith has on Debtor's homestead can be avoided. It appears, however, that a prior decision of this Court is controlling in this matter and that the lien may not be avoided by the Debtor: *In re Adams,* Docket No. 81–0533, decided June 7, 1982. Adams held that the State Court power, under § 598.21, *Code of Iowa,* is a "special declaration of statute to the contrary" contemplated by § 561.16, *Code of Iowa.* In

other words, § 598.21 is a statutory exception to the general rule of § 561.16 that a homestead is exempt from judicial sale. In *Adams,* the Court granted a lien directly upon the homestead to secure a property settlement award. In the instant case, however, the lien on the homestead did not arise directly from the Dissolution Decree, but must be traced from the decree via identifiable proceeds of property on which a lien was placed. Such a direct, versus indirect, fixing of a lien on a homestead is not a distinction that makes a difference in this case. In both cases there is a lien on the homestead as a result of the State Court action, under § 598.21, *Code of Iowa,* dividing the marital property of the former spouses.

An alternate view which produces the same result is to treat a lien that arises from stipulated property settlements as a security interest in the property on which the lien was placed. *See, In re Wicks,* 26 B.R. 769, 9 B.C.D. 1389 (Bkrtcy.Mn.1982). By so construing the lien, it would not be avoidable by the debtor because it was a *voluntary* transfer. *Id.* 26 B.R. 769, 9 B.C.D. at 1390.

## II. CONSTRUCTIVE TRUST

■ Because liens are illusive creatures and lien avoidance in this case is a complex issue, this Court is not content to find only that Patsy Smith has a lien on the homestead of the Debtor. If the Debtor could avoid the lien, it would clearly be inequitable to allow him to benefit from his self-admitted refusal to follow the agreement he made with Patsy Smith in their Dissolution Decree stipulated settlement. The stipulated agreement certainly gave Patsy Smith some type of property interest in the securities and/or the proceeds of their sale, because the proceeds were to be applied against a debt on which she was liable and for which there was a lien on her property. When the Debtor used the proceeds, not to reduce the debt but rather to purchase a

---

1. *See, e.g., Matter of Topeka Motor Freight, Inc.,* 553 F.2d 1227, 1231 (10th Cir.1977); *Dodge Motor Trucks, Inc. v. First Nat'l Bank of Omaha,* 519 F.2d 578, 582 (8th Cir.1975); *Blake Construction Co. v. American Vocational Ass'n., Inc.,* 419 F.2d 308, 311 (D.C.Cir.1969).

932

home, he appropriated property that was to inure to the benefit of Patsy Smith. Case law is rife with authority to impose a constructive trust in situations such as this where it would be inequitable to allow a person to keep or use property that should have gone to another. *See,* cases cited in note 1, *supra.*

### III. SALE OF DEBTOR'S HOMESTEAD

■ There are several adversary matters pending in this case; some that would affect discharge of the debt in question. A sale of the Debtor's homestead at this time would only be necessary if discharge of the Debtor would affect Patsy Smith's interest in that homestead. *See, Matter of Harris,* Docket No. 65–BK–2122–C, No. District of Ia. (Bankruptcy) decided June 30, 1966. Discharge of the debt would not, however, destroy Patsy Smith's interest in the Debtor's homestead. The lien which Patsy Smith can assert on the Debtor's homestead would certainly survive the discharge of the underlying debt; more importantly, the equitable remedy of a constructive trust which the Court now imposes on the Debtor's homestead cannot be affected by any discharge of the debt or any complaints to avoid a lien. Therefore, a sale of the Debtor's homestead is not necessary at this time, and should wait for other pending matters to be resolved.