In re Gerald J. SANDERFOOT, Gerald Sanderfoot, Gerald Sanderfoot, f/d/b/a Improvements Unlimited and d/b/a Ragun's Bar, Debtor(s).

Bankruptcy No. 87–02046.

United States Bankruptcy Court, E.D. Wisconsin.

March 9, 1988.

Harvey G. Samson, Bollenbeck, Block, Seymour, Rowland & Samson, S.C., Appleton, Wis., for petitioner.

Charles J. Hertel, Dempsey, Magnusen, Williamson & Lampe, Oshkosh, Wis., for respondent.

## DECISION

M. DEE McGARITY, Bankruptcy Judge.

This case comes before the court on an objection to the debtor's motion for lien avoidance under 11 U.S.C. § 522(f)(1). A decree of divorce entered by a Wisconsin state court granted the debtor's ex-spouse a lien on the debtor's residence to secure payment to the ex-spouse of her portion of the property division. The debtor is seeking to avoid this lien under § 522(f)(1) as impairing his homestead exemption. For the reasons set forth below, the debtor's motion for lien avoidance under § 522(f)(1) will be denied.

The debtor's former spouse has also objected to the debtor's valuation of assets in this bankruptcy and argues that the debtor is bound by the determinations of value in their divorce. The court now determines that it is not bound by those values, but in view of its ruling on the debtor's motion, it is unnecessary for a finding of value to be made at this time.

## FACTS

Gerald J. Sanderfoot, the debtor, and Jeanne Farrey Sanderfoot were divorced on February 5, 1987. There was no agreement of the parties as to any provision of the division of property, maintenance or child support, and a trial was held on all issues. In the decree of divorce the state court found that the couple owned property including approximately 27 acres of land with the couple's residence on it valued at $104,000. In addition, there was a business, Ragun's Bar, two cars, a tractor, trailer and numerous items of personal property.

Certain personal property was ordered turned over to the debtor's ex-spouse or sold at auction. The debtor was awarded title to all of the parties' remaining property, including house, land, both cars and the business together with responsibility for its attendant liabilities. In return for her interest in that property, the wife was awarded $29,208.44 in cash, amounting to approximately one-half of the net estate, payable in two equal installments on January 10, 1987, and April 10, 1987. To secure this payment, the court ordered that a lien in her favor be placed on the marital residence. In addition, the decree provided that the debtor pay child support, maintenance to his ex-spouse and attorney fees.

The record in this court shows that up until the time Mrs. Sanderfoot applied for a relief from stay, the debtor had not complied with a single order of the state court. He had not conducted the auction, delivered the personal property to his ex-wife, or made a single payment toward child support, maintenance or attorney fees. He had not made the cash payments that were ordered by the court to be made to his ex-wife as compensation for her interest in the property.

Four months after entry of the decree of divorce, the debtor filed a Chapter 7 bankruptcy. Claiming that it impaired his homestead exemption in the property, he then moved pursuant to 11 U.S.C. § 522(f)(1) to avoid the lien given to his wife on the marital residence.[1] He listed the value of the residence at $82,750 in contrast to the $104,000 which was found by the state court to be the value of that property. The parties later stipulated to an independent appraisal of the property. It was appraised at $95,000, but there was no agreement to accept the appraiser's valuation.

The parties agree that the following are the only issues in contention: Whether the debtor may, pursuant to 11 U.S.C. § 522(f)(1), avoid a lien arising from the contested property division in his divorce proceeding, and whether the debtor is bound by the findings of the divorce court regarding the valuation of assets.

## DECISION

The debtor argues that because property division payments are dischargeable under 11 U.S.C. § 523, he should be able to avoid the lien on his homestead. Such payments are indeed dischargeable, but this serves only to relieve the debtor of personal liability. The lien on the residence securing these payments will nevertheless remain in force unless it can be avoided under § 522(f) or another Code provision. *In re Williams*, 38 B.R. 224, 226–27 (Bkrtcy.N.D. Okl.1984). The court first addresses that issue.

### Lien Avoidance

■ Before any lien may be avoided under § 522(f)(1), the debtor must prove three elements:

1. The lien is fixed on an interest of the debtor in property;

2. The lien impairs an exemption to which the debtor would otherwise be entitled; and

3. The lien is a judicial lien.

*In re Hart*, 50 B.R. 956, 960 (Bkrtcy.D. Nev.1985); *In re Thomas*, 32 B.R. 11, 12 (Bkrtcy.D.Or.1983).

The lien this debtor seeks to avoid is not of the type that Congress intended to address by § 522(f)(1).

Congress intended by § 522(f)(1) to allow the removal of judicial liens obtained by creditors on a debtor's exempt property. "... the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may avoid any judicial lien on exempt property ... (This) right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If the creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions ..." House Report 95–595, 95th Cong., 1st Sess., 1977, p. 126, U.S.Code Cong. & Admin.News, 1978, pp. 5787, 6087.

*In re Thomas, supra,* at 12.

This legislative history makes clear that the policy behind 11 U.S.C. § 522(f) was not to circumvent a divorce court's decision by allowing one spouse to acquire substantially all of the predivorce assets to the exclusion of the other. Mr. Sanderfoot is attempting to manipulate bankruptcy law for this very purpose, and to permit such a result would be inequitable and contrary to public policy. However, in addition to policy grounds, there are legal grounds for denying avoidance of the lien.

Mrs. Sanderfoot's lien is without question a type of judicial lien. 11 U.S.C. § 101(32). *But see Wozniak v. Wozniak,* 121 Wis.2d 330, 359 N.W.2d 147 (1984), which characterized such a lien as a mortgage. Furthermore, even if the $104,000

---

**1.** (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

    (1) a judicial lien; ...
11 U.S.C. § 522(f)(1)

value found by the divorce court is used, as she has argued, and the amount of the first and second mortgages ($37,490 and $9,935, respectively) is deducted, the lien impairs the debtor's homestead exemption.

Section 522(f) permits avoidance of the *"fixing* of a lien on an *interest* of the debtor." The statute uses the word "fixing" instead of "fixed;" "interest" instead of "property." The implication of the House Report and this language in § 522(f) is that Congress intended the avoidance of liens that became fixed after the debtor's acquisition of the interest in property, not before. *In re Williams,* 38 B.R. 224, 226–27 (Bkrtcy.N.D.Okl.1984); *Thomas, supra,* at 12. More explicitly, § 522(f) provides that "a judicial lien which attached to an interest in property prior to the debtor's acquisition of that interest is not avoidable" pursuant to § 522(f) inasmuch as "the phrase 'an interest of the debtor in property' refers to an unencumbered interest at the time of acquisition." *Williams, supra,* at 228, quoting from *In re McCormick,* 18 B.R. 911 (Bkrtcy.W.D.Pa.1982).

As stated in *Williams:*

[i]t is clear that a lien imposed by a divorce decree does not even remotely resemble the scenario presented here, [where creditors rush to turn their unsecured claims into judicial liens before the debtor can file bankruptcy] which presupposes the existence of a property interest in the debtor *before* the attachment of a judicial lien to that interest. (emphasis original)

*Id.* at 227–28.

In a divorce proceeding, the document which conveys one spouse's interest in the homestead to the other spouse simultaneously creates a lien in favor of the spouse who will no longer be allowed to live in the residence. In effect, the property is conveyed to the debtor subject to a lien to secure payment of the nonresident spouse's share of the property settlement. *Thomas, supra.* As such, the debtor's property interest is an "interest of the debtor in property" which was not owned by him before it was conveyed to him with the judicial lien attached. A lien of this kind, whether or not the creditor is an ex-spouse, may not be avoided. *McCormick, supra.* (Debtor acquired her interest in property after the creditor's lien attached. Since she received it subject to the lien, it was unavoidable under § 522(f).)

This issue has not yet been decided at the appellate level in the 7th Circuit. The Court of Appeals of the 8th and 10th Circuits and the Bankruptcy Appellate Panel of the 9th Circuit have considered it but reached inconsistent results. In *Boyd v. Robinson,* 741 F.2d 1112 (8th Cir.1984), the bankruptcy court found that a lien imposed by a divorce decree could be avoided as a judicial lien if the lien was the result of a contest as opposed to an agreement between the parties. The district court reversed, and the 8th Circuit Court of Appeals affirmed the district court. The Court of Appeals held that the lien in question protected the debtor's ex-spouse's "pre-existing" property right in the marital residence arising under state law during the marriage. *Id.* at 1115.

In *Boyd v. Robinson,* the wife had owned the homestead prior to marriage and had continued to hold the property in her own name following marriage. The court analyzed Minnesota law to determine whether the nondebtor husband had acquired an interest in the homestead prior to the divorce. Minnesota law restricts conveyance of a homestead without a spouse's consent and provides for an inchoate right upon the death of the owner spouse during marriage. The court noted that the nondebtor had contributed to the mortgage and improvements on the house and that the value of the equity in the house was divided equally in the divorce according to Minnesota's statute providing for equitable division of property at divorce. In addition, Minnesota's definition of a "mortgage" includes the interest created by a divorce decree. In view of the foregoing, the court concluded that the lien attached to the nondebtor's property at the time it was conveyed to him by the divorce decree, and that it did not attach to the debtor's interest. Consequently, the lien was not avoid-

able under 11 U.S.C. § 522(f). *Id.* at 1114–15.

In the case at bar, it is not clear from the record whether the parties owned the homestead as joint tenants or tenants in common before the divorce, or whether it was always in Mr. Sanderfoot's name only. If Mrs. Sanderfoot was a co-owner and the divorce judgment conveyed her interest to the debtor, Mr. Sanderfoot took the property subject to her lien. In that event, the lien did not attach to the interest of the debtor, and it is not avoidable under 11 U.S.C. § 522(f)(1).

However, whether or not Mrs. Sanderfoot held title prior to the divorce is not determinative of this case. Applying the reasoning of *Boyd v. Robinson*, Mrs. Sanderfoot had an interest in the homestead even if it was in Mr. Sanderfoot's name at all times prior to the divorce. Wisconsin law as well as Minnesota law provides for an equitable property division at divorce. Wis.Stat. § 767.255. With the exception of property acquired by gift or inheritance (which is only divided upon a finding of hardship), all property owned by either spouse at the time of divorce is presumed to be divided equally, although the court may deviate from an equal division based on equitable considerations set forth in the statute. *Id.* In this case the divorce court found no reason to alter these presumptions, and it divided the Sanderfoots' net estate equally.

The Wisconsin Supreme Court has analyzed Wisconsin's divorce law as creating a "species of common ownership" tantamount to an interest in property arising during the marriage, regardless of how property is titled or owned. *Krueger v. Wisconsin Department of Revenue*, 124 Wis.2d 453, 460, 369 N.W.2d 691, 694 (1985). Like Minnesota, Wisconsin requires a nontitled spouse's consent to convey a homestead (Wis.Stat. § 706.09(1)(e)) and preserves a surviving spouse's rights in property at the death of the other spouse. *See* Wis.Stat. §§ 851.55(3m), 861.02, .03. Unlike Minnesota, Wisconsin does

not have a statute defining this type of lien as a mortgage, but state case law accomplishes the same result. Where one party in a divorce action is granted an interest in specific real property subject to a lien of the other party in the same property to secure payment of a sum of money, under Wisconsin law, that lien is a mortgage. *Wozniak v. Wozniak, supra.*

The court in *Wozniak* distinguished a lien granted by the divorce court on specific property from a judgment lien which, under Wis.Stat. § 806.15, creates a general lien on all real estate of the debtor. The court concluded that the divorce court had created a mortgage lien and not a judicial lien. *Id.*, 121 Wis.2d at 336, 359 N.W.2d 147.

Finally, Wisconsin's enactment of the Marital Property Act, effective January 1, 1986, gave spouses an equal ownership interest in property earned or acquired during the marriage and after the determination date (the date from which the Act applies to a married couple, Wis.Stat. § 766.01(5)). Wis.Stat. § 766.31. Since the parties remained married for over a year after the Act became effective, it is likely that improvements or mortgage payments during the year were made with marital property and that Mrs. Sanderfoot thereby acquired an ownership interest. Wis.Stat. § 766.63.[2]

Taken together, these considerations warrant application of the *Boyd v. Robinson* analysis to Wisconsin law, and they support a similar result in this case. In this case, regardless of how title was previously held, the debtor acquired his interest by virtue of the divorce judgment and subject to the lien. The lien did not attach to the debtor's interest, and it is accordingly not avoidable.

In an almost identical fact situation to that in *Boyd v. Robinson*, the Court of Appeals for the Ninth Circuit held that the lien *did* attach to an interest of the debtor in property. *In re Pederson*, 78 B.R. 264 (9th Cir. BAP 1987). The court said that the divorce decree extinguished the non-

---

2. Christiansen, Haberman, Haydon, Kinnamon, McGarity and Wilcox, *Marital Property Law in* *Wisconsin*, ATS–CLE State Bar of Wisconsin (2nd ed. 1986) Ch. 3.

debtor's interest. The debtor was therefore the only legal owner of the property in question, and the non-debtor's lien attached to that property. Because the divorce decree expressly imposed a lien on the real property awarded to the debtor, the court held that the lien was a judicial lien under 11 U.S.C. § 101(32), and that it could be avoided under 11 U.S.C. § 522(f). The court thought this result harmonized different Code provisions in that because the debt is dischargeable under 11 U.S.C. § 523, the lien supporting that debt should likewise be avoidable under 11 U.S.C. § 522(f). *Id.* at 267.

*Maus v. Maus,* 837 F.2d 935 (10th Cir. 1988), also allowed avoidance of a divorce judgment lien. The parties had agreed to the debtor's receiving the homestead "free and clear of any and all claims" of her former husband. The court found that if a lien existed, it was a judicial lien and was avoidable under 11 U.S.C. § 522(f)(1). In rejecting the reasoning of *Boyd v. Robinson,* the court stated that "[u]nder this theory, the pre-existing interest does not pass to the debtor spouse under the divorce decree, and the lien attaches to the pre-existing interest of the creditor spouse rather than to the interest of the debtor spouse (cite omitted)." *Maus, supra,* at 939. The court discussed spouses' property rights at divorce under Kansas law, which are vested but undetermined until the aggregate estate is equitably divided by the divorce court. Since the divorce court "may" award the entire interest in particular items to one spouse alone, the court concluded, "[t]his construction of the nature of marital rights in Kansas by the Kansas courts clearly defeats the theory of a pre-existing property interest which is *not* extinguished by the divorce decree." (Emphasis added.) *Id.* While the *Maus* result may have been correct because of the parties' agreement, it appears that under Kansas divorce law, which is similar to Minnesota (*Boyd*) and Wisconsin in property division principles, the nondebtor spouse *did* have a pre-existing interest in the property

which passed to the debtor via the divorce decree, and the *Maus* court failed to recognize that interest. *Boyd* found that the nondebtor had had a pre-existing ownership interest (as opposed to security interest) to which the lien attached, *Id.* at 1114–15, even though the ownership (title) interest was not retained by the nondebtor after the divorce. Ownership of property and title thereto passed to the debtor spouse by the divorce decree subject to the lien to secure payment. The bankruptcy court in *Maus* had also found that the lien was "tantamount to an equitable mortgage," but nowhere is this addressed by the Court of Appeals. *See In re Maus,* 48 B.R. 948, 951 (Bkrtcy.D.Kan.1985).

*In re Grimes,* 46 B.R. 84 (Bkrtcy.D.Md. 1985), found such a lien avoidable under § 522(f), but it did so without discussion or reference to other judicial decisions. *Id.* at 86. The same court, again without analysis, in *In re Coffman,* 52 B.R. 667 (Bkrtcy. D.Md.1985), made the same finding.

Although the cases just cited are to the contrary, the greater weight of authority is that bankruptcy courts will not allow a debtor to avoid a lien arising from a property settlement in a divorce proceeding. *See, e.g., In re Wicks,* 26 B.R. 769 (Bkrtcy. D.Minn.1982); *In re Scott,* 12 B.R. 613 (Bkrtcy.W.D.Okl.1981). Several bankruptcy courts have based this result, as did *Boyd,* on a finding that the lien did not attach to an interest of the debtor in property. *In re Hart,* 50 B.R. 956, 961 (Bkrtcy. D.Nev.1985); *In re Williams, supra.* Other courts have used a variety of theories to achieve the same result.

One such theory is the equitable lien.[3] In some cases equitable liens have been imposed by bankruptcy courts when exspouses filed bankruptcy primarily to avoid compliance with the property division provisions of their divorce decrees. The equitable lien is a special and limited form of constructive trust. Both the equitable lien and the constructive trust are imposed to

---

**3.** However, an equitable mortgage is available under Wisconsin law only where a technical error prevented the creation of a legal mortgage. *Matter of Bailey,* 20 B.R. 906, 910 (Bkrtcy. W.D.Wis.1982). The question of perfection of the lien has not been raised in the instant case.

prevent unjust enrichment.[4] "The difference is that where the constructive trust gives completed title to the plaintiff, the equitable lien gives him only a security interest in the property, which he can then use to satisfy a money claim." *In re Bailey,* 20 B.R. 906, 910 (Bkrtcy.W.D.Wis.1982), quoting from Dobbs, Remedies § 4.3, at 249 (1973).

■ Where no lien is expressly imposed by the divorce decree, the unsecured property division payments may be discharged in bankruptcy. *See Stout v. Prussel,* 691 F.2d 859, 861 (9th Cir.1982). However, where property division decrees identify certain property as the source of payment, ex-spouses who are to receive payment are recognized as having an equitable lien in that property if unjust enrichment to the other spouse would result without it. *Caldwell v. Armstrong,* 342 F.2d 485, 490 (10th Cir.1965). In Wisconsin, it is not even necessary to identify certain property as the source of payment; equitable liens may be imposed by showing only that unjust enrichment may result to a former spouse if this debt can be discharged or avoided. *In re Bailey, supra.* Since equitable liens are common law liens and not judicial liens, they may not be avoided under 11 U.S.C. § 522(f).

Another theory (not applicable here) by which a lien of this kind has been preserved in bankruptcy is that although it resembles a judicial lien, it is in fact a security interest. The Bankruptcy Code defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(32). A security interest is a "lien created by agreement." 11 U.S.C. § 101(45). Where a property division decree results from an agreement of the parties and expressly includes a lien to secure payment, the lien is considered to have the

character of a security interest as well as meeting the definition of judicial lien. Since "security interest" in these situations is considered the more accurate category, such liens have been held to be unavoidable under 11 U.S.C. § 522(f). *In re Hart, supra,* at 961 (lien considered more in nature of purchase money obligation than judicial lien); *In re Rosen,* 34 B.R. 648 (Bkrtcy.E. D.Wis.1983), aff'd. No. 83–C–2002 (1984).

As a result of these court decisions that distinguish between divorce decree liens which are the result of an agreement between the parties and those which are judicially imposed, the impression was created that because the former cannot be avoided as security interests, the latter *can* be avoided as judicial liens. *In re Wicks,* 26 B.R. 769 (Bkrtcy.D.Minn.1982). At least one court has expressly rejected this distinction. *Thomas, supra,* at 13. However, that analysis is unnecessary here given this court's finding that the lien in this case does not attach to an interest of the debtor in property and for that reason is unavoidable.

### Valuation of Assets

■ The debtor's ex-spouse has objected to the valuation of assets set out by the debtor in his schedule. She claims that *res judicata* or collateral estoppel[5] confine the debtor to the findings of the state court divorce decree as to the value of assets.

For either *res judicata* or collateral estoppel to apply, the first requirement is that the claim or issue sought to be precluded be the same as in the prior action. *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987). In the two court actions under consideration, the adversary proceeding in bankruptcy and the divorce, there appears to be a common issue: valuation of assets. This apparent commonality is deceiv-

---

4. Under certain circumstances, courts will also impose constructive trusts to protect an ex-spouse's interest in property. *In re Graham,* 28 B.R. 928 (Bkrtcy.N.D.Ia.1983). (Ex-wife given a constructive trust in ex-husband's homestead where he used the proceeds of marketable securities and cash value of life insurance policy to buy a home for the purpose of claiming homestead exemption in bankruptcy rather than pay-

ing ex-wife from those funds as directed by divorce decree.)

5. *Res judicata* in its broader sense is sometimes taken to include both concepts. *See Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Spilman v. Harvey,* 656 F.2d 224 (6th Cir.1981).

however because the valuation involves two different dates. In the divorce proceeding, the property was assigned a value several months before the decree of divorce was entered. In bankruptcy, property claimed as exempt must be valued as of the date the petition is filed. 11 U.S.C. 522(a)(2). Real and personal property alike can appreciate or depreciate in a period of several months. Therefore, the valuation of property in a divorce decree cannot be binding on a bankruptcy court. *In re Erwin*, 25 B.R. 363 (Bkrtcy.D.Minn.1982).

An order will be entered denying the debtor's motion under § 522(f)(1).