STEPHEN H. ANDERSON, Circuit Judge.
 

 Linda Parker appeals from a district court order affirming a bankruptcy court ruling that Parker, the former spouse of debtor/appellee Gary R. Donahue, was an unsecured creditor of Donahue and that her unsecured claim was properly discharged. 62 B.R. 607. The dispute in this case centers around the terms of a divorce decree pursuant to which Donahue was awarded a certain piece of property of their marriage, but “subject to” a monetary judgment awarded to Parker. Subsequent to the divorce Donahue filed bankruptcy and sought to discharge his obligation to Parker under the terms of the divorce decree. We must determine whether Parker is an unsecured creditor whose claim was properly discharged. For the reasons set forth below we reverse the judgment of the district court and hold that Parker was a secured creditor whose claim on the marital asset in question could not be discharged.
 

 BACKGROUND
 

 The parties do not dispute the basic facts of this case, which we essentially adopt from the district court opinion. Parker and Donahue were divorced on August 11,1982 in Johnson County, Kansas. The divorce decree provided in pertinent part as follows:
 

 “E. Judgment against the defendant [Donahue] in the amount of $43,650, payable on February 15, 1983, or upon the remarriage of the defendant, the sale of the property, or a conveyance or mortgage of the property, whichever should occur first; judgment shall bear interest at the judgment rate of interest when the same is due and subject to execution.”
 

 R.Vol. I at Tab 2. It further awarded to Donahue:
 

 “A. Real property [the ‘Property’] legally described as follows, subject to any indebtedness thereon and to the judgment to plaintiff [Parker] in the amount of $43,650:
 

 The Southwest
 
 Vi
 
 of Section 27, Township 17, Range 25, Miami County, Kansas.”
 

 Id.
 
 The decree also specifically stated, “The plaintiff [Parker] has earned sufficient income to support herself and voluntarily waives her right to alimony.”
 
 Id.
 
 Parker did nothing further with the divorce decree prior to Donahue’s bankruptcy petition was filed. More specifically, she did not attempt to file an attested copy of the decree in Miami County, where the Property is located, until after Donahue filed for bankruptcy.
 
 [1]
 

 Parker testified before the bankruptcy court that she had made “numerous” requests for payment from Donahue of the amount due her under the divorce decree. R.Vol. Ill at 12. She then testified as follows:
 

 
 *261
 
 “Q. Did you ever seek an order from the Johnson County District Court to allow you to foreclose or execute on that? “A. [by Parker] Yes.
 

 “Q. And what happened as a result of that?
 

 “A. He filed bankruptcy.”
 

 Id.
 

 Donahue’s voluntary Chapter 7 bankruptcy petition was filed on November 7, 1984. He claimed the Property was exempt under the Kansas homestead laws. Parker was listed as an unsecured creditor in the amount of $48,243.21. James T. Wiglesworth, Parker’s attorney in the divorce proceeding, was also listed as an unsecured creditor in the amount of $500.00, representing attorney’s fees Donahue was obligated to pay pursuant to the divorce decree.
 
 [2]
 
 The parties do not contest on appeal the status of the $500.00 claim for attorney’s fees. The only other creditor listed in Donahue’s petition was Estol Keltner, described in the petition as a holder of a “contract for deed” on the Property.
 

 Parker filed a proof of claim in Donahue’s bankruptcy proceeding, asserting that she was a secured creditor in the amount of $43,650.00 by virtue of the divorce decree, and an unsecured creditor in the amount of $500 because of Wigles-worth’s attorney’s fees which she had paid. Donahue subsequently filed a motion to determine the status of her claim, asking the court to either find Parker’s claim unsecured or, upon a finding that her claim was secured, permit him to file an application to avoid a lien under 11 U.S.C. § 522(f), (g) and (h). After two hearings before the bankruptcy court on the matter, the bankruptcy court held that Parker’s claim was unsecured at the time of Donahue’s bankruptcy petition because she “failed to perfect the lien interest in the Miami County real property as required by K.S.A. 60-2202.” R.Vol. I at Tab 2.
 
 [3]
 
 The district court affirmed, relying on K.S.A. 60-2202, stating:
 

 “The ... statute is clear. Appellant has failed to comply with the terms of the statute in that the Johnson County journal entry was never recorded in Miami County prior to appellee’s filing of a petition in bankruptcy. Therefore the lien cannot be imposed on the real estate in that county.”
 

 R.Vol. I at Tab 11. Parker appeals that ruling.
 

 She argues that the divorce decree created a lien in her favor against the Property, and that such a lien is distinguishable from a judicial lien contemplated by section 60-2202.
 
 [4]
 
 The filing of the divorce decree in Miami County would only have served the purpose of perfecting “her already acquired lien interest and would have protected that interest from the claims of third parties ... [but it] was unnecessary to protect Parker’s interest as against Dona
 
 *262
 
 hue.” Brief of Appellant at 5. Wigles-worth also characterizes Parker’s interest in the Property as an “equitable lien.” Reply Brief of Amicus Curiae at 6.
 
 [5]
 

 Donahue argues that his debt to Parker “is clearly a money judgment ... dis-chargeable in bankruptcy” and that Parker was correctly deemed an unsecured creditor by virtue of her failure to perfect her judgment lien by filing it in Miami County pursuant to section 60-2202.
 

 DISCUSSION
 

 Under 11 U.S.C. § 522(c)(1), a debt- or’s homestead property is “not liable ... for any debt of the debtor” except for those debts specified in certain sections, including section 523(a)(5). That section excepts from discharge any debt “to a spouse, former spouse, or child of the debt- or, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement. ...” 11 U.S.C. § 523(a)(5). “Significantly, property settlements are not included in the section 523(a) exceptions to discharge, and courts generally have held that unsecured debts representing property settlements
 
 are
 
 dischargeable in bankruptcy.”
 
 Maus v. Maus,
 
 837 F.2d 935, 938 (10th Cir.1988);
 
 see also Hoivik-Olson v. Hoivik (In re Hoivik),
 
 79 B.R. 401, 404 (Bankr.W. D.Wis.1987);
 
 Williams v. Williams (In re Williams),
 
 38 B.R. 224, 225-26 (Bankr.N.D. Okla.1984). The central issue in this case, as in many others, is whether the $43,650 obligation to Parker is simply an “unsecured debt[] representing [a] property settlement ]” or whether it is a secured debt which is not dischargeable in bankruptcy.
 

 We note at the outset, as have others before us, that courts have some difficulty in defining precisely the interest of an ex-spouse arising out of a property settlement made during a divorce proceeding.
 
 See generally Maus,
 
 837 F.2d at 939 (“Many courts have struggled to find theories under which a lien to enforce a property settlement survives bankruptcy.”);
 
 In re Sanderfoot,
 
 83 B.R. 564 (Bankr.E.D.Wis.1988) (surveying the various theories courts employ and the somewhat inconsistent results). Typically, this issue arises, as in
 
 Maus,
 
 in the context of a motion to avoid a lien arguably created in a divorce proceeding. While we do not reach, in this case, the question of avoidability of any lien, the initial analysis undertaken by courts in lien avoidance cases to determine what kind of “lien” or interest is created by a divorce decree is relevant to our case.
 

 A number of theories and variations thereon are employed.
 
 See, e.g., Maus,
 
 837 F.2d at 938 (if a lien was created by award
 
 *263
 
 of money judgment in a divorce decree, it was an avoidable “judicial lien as defined in 11 U.S.C. § 101(27).”);
 
 Pederson v. Stedman (In re Pederson), 78
 
 B.R. 264, 266-67 (Bankr. 9th Cir.1987) (divorce decree created “a valid equitable lien under Washington law” which was an avoidable “judicial lien” under 11 U.S.C. § 522(f)(1));
 
 Boyd v. Robinson (In re Boyd),
 
 741 F.2d 1112, 1113-14 (8th Cir.1984) (lien created in divorce proceeding was not avoidable because it did not attach to an interest of the debtor spouse “but rather protects a preexisting interest of ... [the creditor spouse] in the homestead that was created under Minnesota law prior to the marriage dissolution.”);
 
 Duncan v. Sczepanski (In re Duncan),
 
 85 B.R. 80 (W.D.Wis.1988) (lien created in a divorce decree was an avoidable “judicial lien” under 11 U.S.C. § 522(f)(1));
 
 In re Sanderfoot, 83
 
 B.R. at 568 (“The lien did not attach to the debtor’s interest, and it is accordingly not avoidable.”);
 
 In re Shands, 57
 
 B.R. 49 (Bankr.D.S.C.1985) (lien arising from divorce decree was essentially a nonavoidable security interest, not a judicial lien);
 
 Hart v. Hart (In re Hart),
 
 50 B.R. 956, 961 (Bankr.D.Nev. 1985) (property settlement and divorce decree created an equitable lien “more in the nature of a purchase money obligation” which was not avoidable);
 
 Wicks v. Wicks (In re Wicks),
 
 26 B.R. 769, 771-72 (Bankr.D.Minn.1982) (lien arising out of divorce decree was “the result of a consensual voluntary transfer ... [and] is a security interest as defined under 11 U.S.C. Section 101(37)” and cannot be avoided),
 
 aff'd. on other ground, Boyd v. Robinson (In re Boyd),
 
 741 F.2d 1112 (8th Cir.1984);
 
 Cowan v. Cowan (In re Scott),
 
 12 B.R. 613, 617-18 (Bankr.W.D.Okla.1981) (lien arising out of divorce decree was nonavoidable because “intended as security for the payment of money.”);
 
 see also Caldwell v. Armstrong,
 
 342 F.2d 485 (10th Cir.1965) (divorce decree which awarded creditor spouse a monetary judgment payable out of proceeds of life insurance policy owned by debtor spouse created an equitable lien against the policy in favor of creditor spouse.). After carefully examining the particular facts of this case, we hold that Parker’s interest is an equitable lien against the Property which secures the debt from Donahue to her. Therefore, the district court improperly affirmed the discharge of Parker’s claim.
 

 Our previous decision in
 
 Maus
 
 addressed several of the theories employed by courts to analyze property settlement agreements. More specifically, in the context of an 11 U.S.C. § 522(f)(1) motion to avoid a lien arising out of a divorce decree we considered whether the lien attached to an interest of the debtor in property, as is required under section 522(f)(1), whether the lien was consensual and whether an equitable mortgage arising from a constructive trust could be imposed. In
 
 Maus,
 
 the parties entered into a property settlement agreement which was incorporated into their decree of divorce. In pertinent part that agreement awarded certain real property to the debtor spouse “free and clear of any and all claims of [the creditor spouse].”
 
 Maus,
 
 837 F.2d at 937. The debtor was also obligated to pay to her soon-to-be ex-husband “the sum of Twenty-Two Thousand Dollars ($22,000.00) on or before the 1st day of September, 1985 ...”
 
 Id.
 

 [6]
 

 The debtor filed for bankruptcy, claiming the property as homestead and listing her ex-husband’s $22,000 claim as an unsecured debt, and then sought to avoid any lien her ex-husband might have on the property. This court held that “if the decree imposes a lien at all, it is a judgment lien under Kan.Stat.Ann. § 60-2202(a). Consequently, it is a judicial lien as defined in 11 U.S.C. § 101(27).”
 
 Maus,
 
 837 F.2d at 939. We therefore affirmed the district court’s decision that the debtor could avoid her ex-husband’s lien on her homestead.
 

 In reaching that conclusion, we specifically rejected the creditor spouse’s argu
 
 *264
 
 ment in that case that any lien did not attach to an interest of the debtor in the property. We stated “any lien in this case attached to an interest of the debtor within the meaning of section 522(f)(1).”
 
 Maus,
 
 837 F.2d at 939.
 
 [7]
 

 We similarly “reject[ed] out of hand the bankruptcy court’s alternative ruling that [the creditor spouse’s] interest was tantamount to an equitable mortgage arising from a constructive trust.”
 
 Id.
 
 at n. 5.
 
 [8]
 
 This court also disagreed with the bankruptcy court’s finding in
 
 Maus
 
 that the lien was a consensual lien created by the parties’ settlement agreement and was therefore not avoidable. We stated:
 

 “[T]he settlement agreement specifically states that the homestead property is granted to [the debtor spouse] free and clear of all claims of [the creditor spouse].
 
 The facts here are therefore distinguishable from those cases relied on by the bankruptcy court in which the decree itself embodies an agreement to create a lien on the property to enforce the property settlement.”
 

 Id.
 
 at 939 (emphasis added). We similarly distinguished
 
 Maus
 
 from
 
 Cowan v. Cowan (In re Scott),
 
 12 B.R. 613, 618 (Bankr.W.D.Okla.1981), where the court found that a lien specifically granted in a divorce decree was not avoidable because “the interest conveyed was intended as security for the payment of money,” on the basis that “the
 
 [Scott
 
 ] court granted a lien in the divorce decree to secure the property settlement.”
 
 Maus,
 
 837 F.2d at 939.
 

 
 *265
 
 The critical difference between this case and
 
 Maus
 
 is that the terms of the divorce decree in
 
 Maus
 
 explicitly awarded the property to the debtor spouse “free and clear” of any claims of the nondebtor spouse. In our case, by contrast, the divorce decree itself clearly contemplated the creation of a lien or security interest of some kind in favor of Parker and against the Property.
 
 [9]
 
 As just stated, that distinction is crucial. We said in
 
 Maus
 
 that
 
 “if the decree imposes a lien at all,
 
 it is a judgment lien under Kan.Stat.Ann. § 60-2202(a).”
 
 Id.
 
 (emphasis added). In other words, the simple money judgment in
 
 Maus
 
 only became a lien, if at all, by virtue of Kan.Stat.Ann. § 60-2202. Such a lien is, we held, an avoidable “judicial lien” under the Bankruptcy Code. In this case, there was
 
 both
 
 a money judgment in Parker’s favor
 
 and
 
 a “lien” against the Property, both of which were created by the divorce decree. That specific “lien” is separate from any lien arising from the money judgment by virtue of section 60-2202.
 

 A number of courts have recognized that an equitable lien against property may arise in a situation such as the one before us today.
 
 See Caldwell v. Armstrong,
 
 342 F.2d at 490 (“An equitable lien is a creature of equity, is based on the equitable doctrine of unjust enrichment, and is the right to have a fund or specific property applied to the payment of a particular debt.”);
 
 In re Sanderfoot,
 
 83 B.R. at 569 (“In some cases equitable liens have been imposed by bankruptcy courts when ex-spouses filed bankruptcy primarily to avoid compliance with the property division provisions of their divorce decrees.”);
 
 Hart v. Hart (In re Hart),
 
 50 B.R. at 960-61 (“Equitable liens may arise either by express contract showing intent to secure an obligation by a charge to particular property, or by implication from the conduct and dealings of the parties. An equitable lien may also be created by a judicial decree ... [Here] [t]he divorce decree ... created an equitable lien in favor of the plaintiff to secure payment of his interest in the equity in the home.”) (citations omitted);
 
 1Bailey v. Bailey (In re Bailey),
 
 20 B.R. 906, 910 (Bankr.W.D.Wis. 1982) (“Equitable liens may be judicially imposed to prevent unjust enrich-ment_”);
 
 but see Republicbank, Lubbock, N.A. v. Daves (In re Daves),
 
 770 F.2d 1363, 1369 (5th Cir.1985) (no equitable lien imposed on homestead properties applies because “[t]o allow a lien to be imposed on homestead property in the absence of compliance with constitutional and statutory requirements merely by calling it an equitable lien ... would render the constitutional and statutory requirements for imposing liens on homestead property almost meaningless.”).
 

 In this case, it is clear that the Property was intended to be the source from which the debt to Parker would be paid. Thus, as in
 
 Caldwell,
 
 there is the right to have a “specific property applied to the payment of a particular debt.”
 
 Caldwell v. Armstrong,
 
 342 F.2d at 490. In addition, permitting Donahue to avoid Parker’s lien or otherwise discharge his debt to her would unjustly enrich Donahue, as it would enable him to retain the one substantial asset of their marriage, while depriving Parker of her share of that asset. Thus, the circumstances permitting the imposition of an equitable lien are present here.
 

 Occasionally, courts have imposed equitable mortgages in such a situation or in a situation where there was clearly an intent or agreement to create a mortgage but some technical failure to create a legal mortgage.
 
 See Boyd v. Robinson (In re Boyd),
 
 741 F.2d at 1116 (Ross, J., dissenting) (lien was not a mortgage because it did not arise “by contract or conveyance.”);
 
 In re Erwin,
 
 25 B.R. 363, 366 (Bankr.D.Minn. 1982) (“ ‘A pledge of real property for the payment of a debt creates an equitable
 
 *266
 
 mortgage.’ The divorce decree secured the former wife’s equity in a lien which constitutes an equitable mortgage and as such is entitled to the same classification and treatment as the purchase money mortgages upon the Debtor’s property.”) (citations omitted);
 
 see also Gugenhan v. Blue Valley National Bank (In re Gugenhan), 55
 
 B.R. 507 (Bankr.D.Kan.1985) (equitable mortgages arose where mortgages defectively acknowledged.);
 
 Garnett State Savings Bank v. Tush,
 
 232 Kan. 447, 657 P.2d 508, 514 (1983) (“Where one party advances money to another upon the faith of an agreement by the latter to secure its payment by a mortgage upon specified lands, but which mortgage is never executed or which, if executed, is so defective or informal as to fail in effectuating the purpose of the execution, equity will impress upon the land intended to be mortgaged a lien in favor of the creditor who advanced the money for the security and satisfaction of his debt.”) (quoting
 
 Beck v. Brooks,
 
 224 Kan. 300, 580 P.2d 882 (1978));
 
 but see In re Boyd,
 
 741 F.2d at 1115 (Ross, J., dissenting) (“If state law were allowed to vary what would otherwise be a judicial lien by merely calling the interest an ‘equitable mortgage,’ havoc would result.”). In this case, it appears from the divorce decree that the Property was the primary asset of the marriage and, as we indicated in
 
 Maus,
 
 upon the filing of the divorce petition, each spouse has a “vested but undetermined, interest in all the property individually or jointly held.”
 
 Maus,
 
 837 F.2d at 939. The stipulation in the decree that Donahue receives the Property, subject to the $43,650 obligation to Parker, has the effect of dividing the asset by leaving the Property with Donahue and directing him to purchase Parker’s interest in the Property for $43,650, secured by a “mortgage” on the Property. The failure to record the decree prevented the creation of a legal mortgage, but arguably the decree had the effect of creating an equitable mortgage. The problem with viewing the decree as creating an equitable mortgage is that, as some courts have emphasized, there was no clear contract or conveyance.
 
 [10]
 
 Whether we call Parker’s interest an equitable lien or an equitable mortgage, the result is the same — we hold that it secures the debt owed by Donahue and makes discharge of her claim as unsecured improper.
 

 Because we find that the divorce decree itself created an equitable lien or mortgage in Parker’s favor, the debt from Donahue to Parker was secured. For that reason it was improper to discharge that debt. Whether any lien is avoidable under section 522 or other provisions of the Bankruptcy Code is appropriately addressed, in the first instance, to the bankruptcy court.
 
 [11]
 
 For the foregoing reasons we RE
 
 *267
 
 VERSE and REMAND for proceedings consistent with this opinion.
 

 [1]
 

 . Parker apparently concedes that the filing of the claim after the commencement of the bankruptcy proceedings was a violation of the automatic stay provisions of section 362.
 
 See
 
 R.Vol. I at Tab 2, Transcript of Proceedings in Bankruptcy Court p. 15.
 

 [2]
 

 . Wiglesworth has filed two briefs in this court as amicus curiae. His interest in this case apparently stems from the fact that Parker has sued him for malpractice arising out of certain aspects of his handling of her divorce proceedings, in particular his alleged failure to "secure and perfect her lien on the homestead in Miami County.” Brief of Amicus Curiae at 6.
 

 [3]
 

 . Section 60-2202(a) provided in pertinent part:
 

 “(a) Any judgment rendered in this state on or after January 10, 1977, by a court of the United States, or any judgment rendered by a district court of this state on or after such date in an action commenced pursuant to chapter 60 of the Kansas Statutes Annotated shall be a lien on the real estate of the debtor within the county in which judgment is rendered.... An attested copy of the journal entry of any such judgment or any judgment rendered by a district court prior to January 10, 1977, together with a statement of the costs taxed against said debtor in the case, may be filed in the office of the clerk of the district court of any other county ... and such judgment shall become a lien on the real estate of the debtor within that county from the date of filing such copy."
 

 K.S.A. 60-2202(a). After the divorce decree was entered in this case, section 60-2202 was modified slightly in a way not relevant to this case.
 
 See
 
 Kan.Stat.Ann. § 60-2202 (1987 Cum.Supp.).
 

 [4]
 

 .Before the bankruptcy court, Parker argued that “her interest is clearly a judgment lien” and that Donahue’s failure to avoid that lien pursuant to 11 U.S.C. § 522 renders her a secured creditor. R.Vol. II at 9. Donahue argues that he never filed a motion to avoid because he viewed Parker’s failure to record her divorce decree as preventing her from acquiring any lien against the Property. Both the bankruptcy and district courts agreed with Donahue.
 

 [5]
 

 . Wiglesworth additionally argues in his amicus brief that, even if we hold that Parker had no valid lien by virtue of the divorce decree, “a strong equitable argument” compels reversal of the district court decision. He urges us to "take into consideration that other factors are relevant besides whether or not the divorce decree was recorded in Miami County. Such factors include the intent of the parties at the time the divorce decree was entered and the equitable result as between the parties in deciding whether or not the interest is dischargeable.” Brief of Amicus Curiae at 11.
 

 In his Reply Brief, Wiglesworth for the first time makes several additional arguments. He argues, first, that Parker and Donahue were joint owners of the Property, pursuant to the contract for deed between themselves and Kelt-ner, and that Donahue's discharge in bankruptcy affected only
 
 his
 
 obligation under the contract. "Estol Keltner could look to Linda Parker for satisfaction of the debt created by the contract for deed if Gary Donahue defaulted in his payments.” Reply Brief of Amicus Curiae at 4. Although Wiglesworth fails to articulate precisely the relevance of this argument, presumably he believes that it would be inequitable to permit Parker to remain fully liable on the contract for the sale of the Property, yet effectively extinguish her beneficial interest in the Property.
 

 Second, Wiglesworth argues that the Property, claimed by Donahue as his homestead, was exempt from the bankruptcy estate and that "[t]he setting apart of the homestead to the bankrupt as exempt property does not relieve the property from the operation of liens created by contract before the filing of the petition in bankruptcy.”
 
 Id.
 
 at 5. As exempt property, the Property and any liens on it are, Wiglesworth argues, outside the jurisdiction of the bankruptcy court.
 

 Finally, Wiglesworth argues that, even if we affirm the district court decision, we "should do so on the basis that this was an involuntary transfer of property [under section 522(h) of the Bankruptcy Code] and not for the reason that the divorce decree judgment was not filed in Miami County, Kansas.”
 
 Id.
 
 at 8.
 

 [6]
 

 . The agreement also provided as follows:
 

 "Should [the debtor] sell or convey the real property ... prior to July 1, 1984, [creditor] shall be entitled to receive 40% of the net proceeds of the sale of the same, after deduction and payment of the existing mortgage thereon and all reasonable costs and expenses of sale, including a realtor’s commission.”
 

 Maus,
 
 837 F.2d at 937.
 

 [7]
 

 . We note that our discussion in
 
 Maus
 
 of marital property rights in Kansas has been criticized.
 
 See In re Sanderfoot,
 
 83 B.R. at 569 ("[I]t appears that under Kansas divorce law ... the nondebtor spouse
 
 did
 
 have a pre-existing interest in the property which passed to the debtor via the divorce decree, and the
 
 Maus
 
 court failed to recognize that interest."). Nonetheless, even the
 
 Sanderfoot
 
 court recognized that our decision in
 
 Maus
 
 “may have been correct because of the parties’ agreement.”
 
 Id.
 
 Thus, the terms of the agreement in
 
 Maus
 
 are crucial to the proper interpretation of our decision in that case.
 

 Additionally, the terms of that agreement distinguish
 
 Maus
 
 from our case. As we noted in
 
 Maus:
 

 "Once a divorce petition is filed, ‘each spouse becomes the owner of a vested, but undetermined, interest in all the property individually or jointly held. The court is obligated to divide the property in a just and equitable manner, regardless of the title or origin of the property.’ The court may cut off all of a spouse’s rights to property by using specific language,
 
 as was done here.
 
 This construction of the nature of marital rights in Kansas by the Kansas courts clearly defeats the theory of a pre-existing property interest which is not extinguished by the divorce decree. We therefore conclude that
 
 any lien in this case
 
 attached to an interest of the debtor within the meaning of section 522(f)(1).”
 

 Maus,
 
 837 F.2d at 939. (emphasis added) (citations omitted);
 
 compare Boyd v. Robinson (In re Boyd),
 
 741 F.2d 1112 (8th Cir.1984);
 
 In re Sanderfoot,
 
 83 B.R. 564 (Bankr.E.D.Wis.1988);
 
 In re Williams,
 
 38 B.R. 224 (Bankr.N.D.Okla.1984);
 
 In re Thomas,
 
 32 B.R. 11 (Bankr.D.Or.1983). Whereas in
 
 Maus,
 
 the decree did indeed cut off all of the nondebtor spouse's interest in the property by awarding it to the debtor spouse "free and clear,” in this case it clearly did not. Parker’s "vested, but undetermined, interest in” the Property continued and was secured by the lien created in the divorce decree. And whatever interest in the Property Donahue received by virtue of the divorce decree he received subject to Parker’s lien.
 
 See generally In re Sanderfoot,
 
 83 B.R. at 567-68. Thus,
 
 Maus
 
 does not completely foreclose the availability in this case of the argument that the lien did not attach to an interest of the debtor in property, for the purpose of determining whether the lien is avoidable by the debtor under section 522(f)(1). Because, as we indicate
 
 infra,
 
 we do not reach the question of avoidability of any lien in this case, we do not pursue this issue.
 

 [8]
 

 . We noted that under Kansas law:
 

 "[a] constructive trust will not be imposed unless an ‘aroma of wrongdoing permeates the atmosphere.’ The bankruptcy court here made no fact findings to support the imposition of a constructive trust, and the record is devoid of any evidence that the requisite circumstances were present. Moreover, 11 U.S. C. § 523(a)(2)(A) specifically covers the requirements for declaring a debt nondischargeable on the basis of fraud. These elements are strict and must be shown by clear and convincing evidence.”
 

 Maus,
 
 837 F.2d at 939-40 n. 5 (citations omitted).
 

 While there have been hints that Donahue’s bankruptcy petition was filed for the sole purpose of escaping his obligation to his ex-wife under the divorce decree, we are bound in this case, as we were in
 
 Maus,
 
 by the lack of any findings or evidence in the record that Donahue’s actions were fraudulent. This does not, however, prevent us from considering whether there is an equitable mortgage in this case which does
 
 not
 
 arise from a constructive trust imposed on the basis of fraud.
 

 [9]
 

 . While the decree did not use the term "lien," the Property was awarded to Donahue "subject to ... the judgment to” Parker. The judgment to Parker was "payable on February 15, 1983, or ... the sale of the [P]roperty, or a conveyance or mortgage of the [P]roperty, whichever should occur first.” Thus, it is clear that the divorce court intended the Property to secure the debt to Parker. Parker’s failure to record the decree in the county where the Property is located, pursuant to section 60-2202, rendered the lien arising from the money judgment in the decree unperfected.
 

 [10]
 

 . Whether there has been an agreement or a conveyance of property in a divorce proceeding for the purpose of determining whether a mortgage has been created is sometimes problematic. In the context of discussing whether a security interest has been created in a divorce decree, one theory by which courts have avoided having one spouse’s property settlement interest avoided or discharged in bankruptcy, some courts have drawn a distinction between divorce decrees incorporating actual property settlement agreements and divorce decrees resulting from contested divorce proceedings, finding that only the former are nonavoidable as “consensual" or pursuant to an agreement.
 
 See, e.g., In re Boyd,
 
 741 F.2d at 1115-16 (Ross, J., dissenting);
 
 In re Duncan,
 
 85 B.R. at 83;
 
 see also In re Wicks, 26
 
 B.R. at 771 (“The crucial question is what brought the lien into existence.”). Other courts have rejected that distinction, stating that the circumstance of whether the parties were able to reach an agreement should not control the nature of the obligation created.
 
 See In re Sanderfoot,
 
 83 B.R. at 570;
 
 In re Jackson,
 
 No. 83-20194 (Bankr.D.Kan. Aug. 30, 1983);
 
 In re Thomas,
 
 32 B.R. at 13. In this case, we have no clear indication that the property division between Parker and Donahue was pursuant to an express agreement between them, incorporated into the divorce decree. However, it is possible to argue that, since neither party has apparently challenged the divorce decree, there has been at least a tacit “consent” to its terms, thereby creating some kind of “agreement.”
 

 [11]
 

 . Technically, as there has been no motion to avoid a lien filed in this case, the avoidability of any lien we recognize as securing the debt to Parker is not before us. Donahue did, however, ask the bankruptcy court to permit him to file such a motion in the event that the court determined that a lien existed. It is appropriate in this case to permit the bankruptcy court in the first instance to address the avoidability, if any, of the equitable lien we recognize today.
 

 
 *267
 
 We believe it also appropriate for the court upon remand to consider whether such an equitable lien would be an avoidable judicial lien under 11 U.S.C. § 522(f)(1), assuming there is a properly filed motion to avoid the lien pursuant to that section. We note that there is some disagreement as to the effect of a finding that an equitable lien has been created in a divorce decree. Some courts have held that such an equitable lien arising out of divorce proceedings is nonetheless an avoidable “judicial lien" under section 522(f)(1).
 
 See, e.g., In re Pederson,
 
 78 B.R. at 266-67;
 
 In re Dudley,
 
 68 B.R. 426, 427 (Bankr.S.D.Fla.1986) (“There is no question that an equitable lien is ‘a judicial lien’ and, therefore, within the scope of § 522(f)(1).”). Some courts specifically hold it is not.
 
 See In re Sanderfoot,
 
 83 B.R. at 570 (“Since equitable liens are common law liens and not judicial liens, they may not be avoided under 11 U.S.C. § 522(f).”);
 
 In re Hart,
 
 50 B.R. at 960-62 (equitable lien "qualifies as a security interest rather than a judicial lien.");
 
 see also American Guaranty, Inc.
 
 v.
 
 Miller (In re Miller),
 
 58 B.R. 192, 197 (Bankr.S.D.Tex.1985) ("Texas courts have held that an equitable lien created by the domestic relations court is an ‘equitable lien and not a judgment lien. The lien arose when the divorce decree was rendered, and because it is not a judgment lien, its existence is not dependent on the filing of the abstract of judgment.’ ”). In
 
 In re Gugenhan,
 
 55 B.R. at 507, a Kansas bankruptcy court held that an equitable mortgage arises by agreement and is not an avoidable judicial lien under section 522(f)(1).
 

 At least one court has distinguished between an equitable lien imposed by the
 
 bankruptcy court
 
 and a "state court ‘judicial lien’ with equitable underpinnings.”
 
 In re Markunes,
 
 86 B.R. 933, 936 (Bankr.S.D.Ohio 1988). The
 
 Mar-kunes
 
 court suggested that the latter, an equitable lien imposed by the state divorce court, would be a “judicial lien” under the Bankruptcy Code.
 

 The court on remand should also consider whether the legislative history behind section 522(f)(1) indicates "that the policy behind 11 U.S.C. § 522(f) was not to circumvent a divorce court’s decision by allowing one spouse to acquire substantially all of the predivorce assets to the exclusion of the other.”
 
 In re Sanderfoot,
 
 83 B.R. at 566;
 
 see also In re Williams,
 
 38 B.R. at 227-28;
 
 In re Thomas,
 
 32 B.R. at 12. The relevant legislative history, while certainly not conclusive, does suggest that Congress was contemplating something different from liens arising out of divorce decrees when it made "judicial liens” avoidable.
 

 “The debtor may void any judicial lien on exempt property_ [That] ... right
 
 allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy.
 
 Bankruptcy exists to provide relief for an overburdened debtor.
 
 If a creditor beats the debtor into court,
 
 the debtor is nevertheless entitled to his exemptions.”
 

 H.Rep. No. 595, 95th Cong., 1st Sess. 126,
 
 reprinted in
 
 1978 U.S. Code Cong. & Admin.News 5787, 6087 (emphasis added). The award of a lien to secure a property settlement in a divorce decree hardly approximates the situation where a creditor ”bring[s] legal action against the debt- or shortly before bankruptcy" or “beats the debtor into court.” We emphasize that this question was not before us in
 
 Maus
 
 because we did not have a lien
 
 created in the divorce decree itself
 
 in that case.