*1020
 
 WILL, Senior District Judge.
 

 This is an appeal from the district court’s order affirming the bankruptcy court’s decision to award administrative expenses to the appellee for his maintenance and improvement of property owned by the debt- or-appellant. The appellee took possession of the property and performed services pursuant to an agreement under which he would eventually purchase the property. This agreement was not completed because the debtor later sold the property to a third party and that sale was approved by the bankruptcy court. For the reasons stated below, the district court’s order is affirmed.
 

 Background
 

 In March 1988, Park Terrace Townhouses (“PTT”), an Indiana apartment complex, debtor-appellant, filed a voluntary petition for relief under Chapter 11. On October 19, 1983, the bankruptcy court authorized the sale of PTT's property (the townhouses) for cash or on terms agreeable to its three mortgagees.
 

 On December 13, 1983, Bruce W. Wilds, appellee, and John K. Meiners, representing PTT, executed a written purchase agreement for the sale of PTT’s property. Under the contract, Wilds agreed to pay the debtor-in-possession $50,000, assume the balance of the first mortgage (held by First Federal Savings and Loan of New Castle), pay the balance of the second mortgage (held by Indiana Bank and Trust Company of Fort Wayne) and pay $75,000 for a full and complete release of the third mortgage (held by Pacific Service Company).
 

 The contract also included the following provisions:
 

 2(d)(ii). In the event the above conditions cannot be met by March 1, 1984, then the Seller shall file in the Bankruptcy Court such applications, complaints, or other proceedings that may be required to effect a sale to Purchaser upon terms herein set forth. If Seller is unable to effect such sale through the Bankruptcy Court by September 1, 1984, then this agreement shall be null and void and of no further force and effect.
 

 8. Seller shall deliver to purchaser full and complete possession and management of Park Terrace following the execution of this agreement. Purchaser shall assume the role of property manager as the same is being conducted by the present manager thereof. Purchaser shall receive no salary for the performance of said managerial responsibilities. Seller agrees to use its best efforts to effect a closing date at the earliest possible time for the purpose of relieving [sic] purchaser of this responsibility pursuant to the terms of this purchase contract.
 

 On appeal from the bankruptcy court’s orders, the district court made the following undisputed findings of fact:
 

 Wilds took possession of the townhouses on December 13, 1983, and personally assumed the roles of property manager and maintenance supervisor. During Wilds’ management, he instituted a marketing program which increased occupancy from 58% to 73% and monthly income from approximately $24,500 to $32,700. Wilds removed the debtor's resident manager and took over the functions of that position by hiring, training, and supervising a staff to perform all required leasing, bookkeeping, maintenance, and related activities. In addition to the maintenance necessary to prevent damage from the severe winter weather, Wilds upgraded and remodeled the rental units.
 

 On January 31, 1984, the debtor entered into another purchase agreement with James H. Calkins. Wilds did not learn of this agreement until February 24, 1984. On February 27, 1984, and March 9,1984, Calkins and Wilds, respectively, filed applications for approval of sale of Park Terrace Townhouses. The debtor-in-possession filed an application for instructions regarding the two purchase agreements on March 19, 1984. The court heard evidence on the pending applications on March 27, 1984. Following this hearing, [on March 29, 1984] the
 
 *1021
 
 Bankruptcy Court approved the sale of Park Terrace Townhouses to Calkins. Calkins immediately assumed possession of the complex.
 

 District Court Order, July 29, 1987, at 3-4.
 

 On April 5, 1984, pursuant to 11 U.S.C. § 503(b)(1)(A),
 
 [1]
 
 Wilds filed an application for administrative expenses regarding his services rendered as property manager and maintenance supervisor from December 13, 1983 to March 29, 1984. The Bankruptcy Court awarded Wilds $21,750 for 870 hours at the rate of $25 per hour.
 
 [2]
 

 The district court originally referred appeal of the bankruptcy court’s orders to a magistrate. We held that the district court did not have authority to refer the appeal to a magistrate and we vacated the magistrate’s order and remanded the appeal to the district court.
 
 In The Matter Of: Park Terrace Townhouses,
 
 No. 87-1245 (April 10, 1987).
 
 See In the Matter of Elcona Homes Corp.,
 
 810 F.2d 136, 138-40 (7th Cir.1987). The district court subsequently affirmed the bankruptcy court’s orders. PTT appeals the district court’s order. We affirm.
 
 [3]
 

 Standard of Review
 

 PTT appeals the award, although not the amount awarded, arguing that: (1) the bankruptcy code allows an award of administrative expenses only if Wilds’ services are rendered with prior court approval, which they were not; and (2) Wilds did not possess an Indiana real estate broker’s license, which is required to collect fees for his services. PTT essentially contends that the district court’s conclusions of law were erroneous. There are no issues of fact.
 
 [4]
 
 Accordingly, our review is
 
 de novo. In re Ellsworth,
 
 722 F.2d 1448, 1450 (9th Cir. 1984).
 

 Analysis
 

 PTT argues that Wilds acted as a “professional person,”
 
 see In re Interstate Restaurant Systems, Inc.,
 
 61 B.R. 945, 949 (S.D.Fla.1986), and, as such, may not receive administrative fees for his services because the bankruptcy court did not give prior approval.
 

 (a)
 
 Except as otherwise provided in this section,
 
 the trustee, with the court’s approval, may employ one or more attorneys, accountants, appraisers, auction
 
 *1022
 
 eers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee’s duties under this title.
 

 11 U.S.C. § 327(a) (emphasis added). PTT also contends that, because Wilds did not seek prior court approval, his services were in the nature of volunteer work, for which he should not receive compensation in any event.
 

 PTT ignores the fact that both the bankruptcy and district courts relied on section 327(b) rather than section 327(a), and the unique facts of this case. The bankruptcy court based its award on 11 U.S.C. §§ 503(b)(1)(A),
 
 see
 
 note 1
 
 supra,
 
 and 327(b), which states:
 

 (b) If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.
 

 The bankruptcy court found that PTT regularly employed professional persons to assume the responsibilities in question assumed by Wilds.
 
 [5]
 
 Accordingly, under section 327(b), PTT could retain or replace such persons if necessary in its ordinary course of business and without prior court approval.
 
 In Re Johns-Manville Corp.,
 
 60 B.R. 612, 618-19 (Bankr.S.D.N.Y.1986).
 
 See also United States ex rel. Kraft v. Aetna Casualty & Surety Co.,
 
 43 B.R. 119, 121 (M.D.Tenn.1984) (court approval was necessary where business did not regularly employ appraiser);
 
 In Re Cummins,
 
 8 B.R. 701, 702 (Bankr.C.D.Cal.1981) (real estate broker could not receive award under section 327(b) because he was not retained on salary, but rather worked for a commission, and did not seek prior court approval).
 

 The fact that Wilds was employed in PTT’s ordinary course of business was admitted by PTT in its application for instructions filed with the bankruptcy court:
 

 4. That since said date [October 19, 1983], and pursuant to the terms of said agreement [the contract entered into on December 13, 1983], Bruce W. Wilds has been in possession of Park Terrace Townhouses, and has managed same, which said management and possession have been in the ordinary course of business of the Debtor in Possession, and at the request of and with the approval of the Debtor in Possession.
 

 Application Of Debtor In Possession For Instructions, February 26, 1986, Record at 4.
 

 PTT additionally argues that the phrase “on salary” in section 327(b) makes that section inapplicable here — Wilds did not receive a salary. Wilds was not “on salary” because it was intended that he (and the other interested parties) would ultimately benefit from his services. He was managing the property he expected to buy, pursuant to a written and executed agreement. PTT prevented the sale to Wilds by selling the property to a third party. By denying him compensation, the estate and subsequent purchaser would reap the benefits of his services, which included an increase in rental income and structural improvements to the apartments. Wilds performed services which were ongoing, previously performed on a regular basis by salaried employees and, which we conclude, are com-pensable under section 327(b), notwithstanding the fact that
 
 he
 
 was not on salary.
 

 The district court also reviewed the underlying written agreement, between PTT and Wilds, and its context, and concluded that awarding administrative expenses is not inconsistent with their intent.
 
 Air Line Stewards, Etc. v. American Airlines, Inc.,
 
 763 F.2d 875, 877 (7th Cir.1985) (“The primary object in construing a contract is to give effect to the intention of the parties.”) (citation omitted),
 
 cert. denied
 
 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778
 
 *1023
 
 (1986). Wilds performed his services without a salary as a condition of the purchase agreement. Although the contract provided for no compensation, Wilds was clearly not acting as a volunteer, as suggested by PTT.
 
 In re WHET,
 
 33 B.R. 443, 448 (Bankr.D.Mass.1983). “The impetus for his offer of services was to induce the debtor to enter into the purchase agreement.” District Court Order, at 10.
 

 PTT argues that paragraph 8 of its contract with Wilds (“[purchaser shall receive no salary for the performance of said managerial responsibilities.”), cited above, precludes an award based on § 327(b). The bankruptcy court, however, made the following observation.
 

 It is clear to the court from the evidence and testimony at trial that Wilds had every reason to believe when he entered Park Terrace under the terms of the Purchase Agreement that he was to be the purchaser. It is not through any lack of effort on Wilds’ part that he was not the ultimate purchaser. For the court to enforce a single line of the purchase agreement, in consideration of all the facts, would be a grave injustice.
 

 Bankruptcy Court Order, May 7, 1985, at 7. We agree.
 

 PTT can not prevent Wilds from receiving compensation based on a contract with which it did not comply. Wilds was prepared to perform and had been performing, with PTT’s knowledge and consent, even after PTT sold the property to Calkins. In contrast, PTT sold the property to a third party without filing any proceedings in the bankruptcy court to effect the sale with Wilds. In addition, the contract states that it is null and void in the event that the sale between the parties is not completed. Accordingly, the contract clause in question does not preclude an award to Wilds.
 

 PTT claims that, notwithstanding its agreement with Wilds, it did not act fraudulently or improperly by subsequently negotiating with other persons for the sale of the apartment complex. Our decision is not based on characterizing PTT’s actions.
 
 See
 
 note 4
 
 supra.
 
 However, by selling the property to Calkins, PTT changed the nature of Wilds’ service and, in that respect, PTT’s actions are critical. Construing the contract in this context, an award of fees is not only equitable but also authorized under section 327(b), as the district court held. Finding that the bankruptcy court’s award of administrative expenses, affirmed by the district court, is authorized by section 327(b), we also conclude that the award was not an abuse of discretion.
 

 Indiana Real Estate Licensing Act
 

 Under Indiana law, real estate brokers must have a license in order to receive compensation for their brokerage services. PTT argues that Wilds was required to possess a license, which he did not possess, and, accordingly, an award of fees is precluded. We find that Wilds was not required to possess a license and, even if he was, the bankruptcy code, as federal law, prevails over the Indiana Code under the supremacy clause.
 

 The relevant sections of the Indiana Code provide:
 

 (a) Except as provided in subsection (b), no person shall, for consideration, sell, buy, trade, exchange, option, lease, rent, manage, list, or appraise real estate or negotiate or offer to perform any of those acts in Indiana, without a license.
 

 (b) This article does not apply to:
 

 (8) Acts performed by a person in relation to real estate owned by that person unless that person is licensed under this article, in which case the article does not apply to him;
 

 (9) Acts performed by a regular, full-time salaried employee of a person in relation to real estate owned or leased by that person unless the employee is licensed under this article, in which case the article does not apply to him; ...
 
 *1024
 
 spective owner. In addition, his services were previously assumed by full-time salaried employees of PTT. Thus, although Wilds’ actions are not literally exempted from the regulation, the unique circumstances of this case are consistent with the exceptions delineated in the Indiana Code. Moreover, Wilds performed his services with the knowledge of all interested parties and his services benefitted them.
 

 
 *1023
 
 Ind.Code § 25-34.1-3-2. Under Ind.Code § 25-34.1-6-2, compensation for acts regulated by the above provision may not be given or awarded if the broker violated the code.
 

 Wilds was not the owner of the property when he assumed managerial and maintenance responsibilities, but he was acting with the understanding that he was a pro-
 

 
 *1024
 
 In addition, the district court found that the purpose of Indiana’s real estate law is to protect persons from the acts of “incompetent or unscrupulous” brokers,
 
 Schreibman v. L.I. Combs & Son, Inc.,
 
 337 F.2d 410, 412 (7th Cir.1964), and that this purpose would not be served in this case by denying Wilds compensation. He acted in good faith.
 

 Wilds clearly fell within the spirit, if not the exact letter, of the exceptions to the application of the statute. Any failure to fit precisely within these exceptions was due to the unique circumstances of this case, and not to any shortcoming by Wilds. The dangers the statute seeks to prevent simply did not arise in this case. Consequently, it does not apply.
 

 District Court Order, at 12.
 

 We agree. Wilds was managing property he reasonably believed he was purchasing pursuant to a written contract. In addition, the interested parties were aware of his activities and such activities were previously performed by full-time salaried employees on a regular basis.
 

 PTT contends that the district court ignored the Indiana Code and, accordingly, PTT asks this court to certify to the Supreme Court of Indiana the following questions:
 

 1. Must a person who manages, for a consideration but not on a salaried basis, an apartment project owned by another, which apartment project contains more than 12 apartment units be licensed under Title 25, Article 34.1, Chapter 3, of the Indiana Code?
 

 2. If so, and if that person is not so licensed, can that person be lawfully compensated in any manner for such management services?
 

 We need not seek such certification. The Indiana Code does not apply to the unique circumstances of this case. In any event, if it does, the bankruptcy code prevails under the supremacy clause. U.S. Const, art. VI, cl. 2.
 

 Conclusion
 

 The district court’s order affirming the bankruptcy court’s decision to award the appellee $21,750 for administrative expenses he incurred in maintaining and supervising the debtor-appellant’s property is
 

 Affirmed.
 

 [1]
 

 . Section 503(b)(1)(A) provides in relevant part:
 

 After notice and hearing, there shall be allowed administrative expenses, ... including — the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.
 

 [2]
 

 . PTT filed a motion before the bankruptcy court to alter or amend the award. In a written opinion, dated January 21, 1986, the bankruptcy court (Judge Rodibaugh) denied PTT’s motion.
 

 [3]
 

 . The appellee has appended a copy of the Magistrate’s vacated opinion to his appellate brief. The debtor-appellant objects to our review of this opinion. Our decision has been reached without any review of the Magistrate’s vacated opinion.
 

 [4]
 

 . Although the parties dispute the nature of PTT’s ongoing negotiations with other prospective purchasers of the property following the execution of its contract with Wilds, i.e., whether continuing negotiations was a breach of its contract with Wilds or possibly fraudulent, the district court's opinion was rendered without regard to a finding of fact on this issue. On this issue, however, PTT claims that the district court ignored the following facts: (1) the mortgagees did not accept Wilds as a buyer; (2) the management agreement between Wilds and PTT was an effort to demonstrate to the mortgagees that Wilds was a capable manager and that they should reconsider him; and (3) the mortgagees remained opposed to Wilds and Pacific Service Corporation rejected Wilds’ offer which was $50,000 greater than Calkins’.
 

 PTT’s contention is incorrect. The district court relied on facts, agreed to by both parties, which included the following: (1) Wilds and PTT executed a purchase agreement; (2) pursuant to the contract, Wilds took possession of the property and assumed the positions of manager and maintenance supervisor; (3) PTT thereafter signed a purchase agreement with Calkins; and (4) following the bankruptcy court's decision to approve the sale to Calkins, Wilds ceased working on the property.
 

 Even if the district court’s finding that Wilds was not aware of Calkins’ contract until February 24, 1984 is a disputed (and material) finding of fact, we conclude that the district court's conclusion is not clearly erroneous,
 
 In re Dill,
 
 731 F.2d 629, 631 (9th Cir.1984), in light of the undisputed facts that thereafter both Wilds and Calkins filed applications before the bankruptcy court for approval of the sale of the property to them. Accordingly, our review only concerns questions of law.
 

 [5]
 

 . PTT had employed Carol Hodges as property manager and her husband as maintenance supervisor prior to Wilds’ assumption of those duties. Although PTT claims that the Mr. and Mrs. Hodges received fees which were much less than those awarded to Wilds for essentially the same work, PTT has not, as noted above, appealed the amount awarded.