**In re Gerald J. SANDERFOOT, Debtor.**

**Jeanne FARREY, f/k/a Jeanne Sanderfoot, Objector–Appellant,**

v.

**Gerald J. SANDERFOOT, Debtor–Appellee.**

**No. 88–3148.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1989.

Decided March 30, 1990.

Charles J. Hertel, David Crist, Dempsey, Magnusen, Williamson & Lampe, Oshkosh, Wis., for objector-appellant.

Harvey G. Samson, Bollenbeck, Block, Seymour, Rowland & Samson, Appleton, Wis., for debtor-appellee.

Before POSNER and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Jeanne Farrey, formerly known as Jeanne Sanderfoot, appeals from the dis-

trict court's order reversing the bankruptcy court's determination that Gerald Sanderfoot could not avoid, pursuant to 11 U.S.C. § 522(f), a lien held by Ms. Farrey on Mr. Sanderfoot's homestead property. Because we agree with the district court that the lien is avoidable, we affirm.

## I

## BACKGROUND

### A. *Facts*

Jeanne and Gerald Sanderfoot were married on August 12, 1966. The Wisconsin Circuit Court for Outagamie County granted a judgment of divorce and property division on September 12, 1986, and entered a written judgment of divorce on February 5, 1987. The court awarded Ms. Farrey half the refund and/or liability with respect to the couple's 1985 income taxes, certain personal property, and half the proceeds of items ordered sold at auction. The marital home, valued by the court at $104,000.00, and all remaining personal property were awarded to Mr. Sanderfoot.[1]

After all assets and debts were assigned to the parties, Ms. Farrey was left with a net estate of $1,091.90, while Mr. Sanderfoot had a net estate of $59,508.79. To achieve a more appropriate distribution, the court ordered Mr. Sanderfoot to pay Ms. Farrey $29,208.44. Mr. Sanderfoot was to pay half that amount ($14,604.22) on or before January 10, 1987; the remaining portion was due on or before April 10, 1987. To secure this debt, the court awarded Ms. Farrey a lien against the home to remain attached until the debt was paid in full.[2] Mr. Sanderfoot has not yet paid any part of the debt. Accordingly, Ms. Farrey has not relinquished her record title interest in the property.

Mr. Sanderfoot voluntarily filed for Chapter 7 bankruptcy on May 4, 1987, and listed the residential home on his schedule of assets. He identified the real estate as his homestead and claimed it was exempt property pursuant to Wis.Stat. § 815.20.[3]

### B. *The Bankruptcy Court*

Pursuant to 11 U.S.C. § 522(f)(1),[4] Mr. Sanderfoot moved to avoid the lien against his property. Ms. Farrey filed her objection to the motion, claiming section 522(f)(1) could not operate to divest her of her inter-

---

1. The court stated: *"Real Estate—House.* The Court awards the real estate—house to the Respondent herein [Gerald Sanderfoot] for $104,000.00." R.14 Ex.B at 9.

2. The court ordered that "[t]he Petitioner herein [Ms. Farrey] shall have a lien against the real estate property of the Respondent for the total amount of money due her pursuant to this Order of the Court, i.e. $29,208.44, and the lien shall remain attached to the real estate property of the Respondent until the total amount of money is paid in full." R.14 Ex.B at 14.

3. Wis.Stat. § 815.20 provides in relevant part:
    Homestead exemption definition
    (1) An exempt homestead as defined in s. 990.01(14) selected by a resident owner and occupied by him or her shall be exempt from execution, from the lien of every judgment and from liability for the debts of the owner to the amount of $40,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided.... The exemption extends to the interest therein of tenants in common, having a homestead thereon with the consent of the cotenants, and to any estate less than a fee.
    A debtor may not exempt an amount greater than his equity in the home, even if that amount is less than $40,000. *In re Galvan,* 110 B.R. 446

(Bankr. 9th Cir.1990); H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 360–61, *reprinted in* 1978 U.S.Code Cong. & Admin. News, 5787, 5963, 6316. The amount of equity a debtor has in his home is a question for the trier of fact, *see In re Galvan,* 110 B.R. 446, and that amount was not precisely determined in this case. We thus are unable to say from the record how much equity the Sanderfoots had in their home at the time of their divorce. However, the issue is immaterial to the resolution of this case. *See infra* section IIB.2.

4. The Bankruptcy Code provides:
    Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
    (1) a judicial lien....
    11 U.S.C. § 522(f).
    Section 522(b)(1) allows an individual debtor to exempt from property of the estate the property listed in section 522(d)(1), which permits exemption of "[t]he debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence...."

est in the marital home.[5] The United States Bankruptcy Court for the Eastern District of Wisconsin denied Mr. Sanderfoot's motion on March 9, 1988. The bankruptcy court applied the reasoning of *In re Boyd*, 741 F.2d 1112, 1114–15 (8th Cir. 1984), which held that a lien created by a divorce decree protects the non-debtor spouse's preexisting interest in the marital home and thus does not attach to the debtor's interest. In this case, the court determined that Mr. Sanderfoot acquired his interest in the property by virtue of the divorce decree and took that interest subject to Ms. Farrey's lien. *In re Sanderfoot*, 83 B.R. 564, 567–68 (Bankr.E.D.Wis. 1988). Consequently, the court held that, even though the lien impaired Mr. Sanderfoot's exemption, it could not be avoided because it did not attach to his interest in the home.

### C. *The District Court*

In determining whether the requirements of section 522(f) had been satisfied, the district court concluded that there was "no dispute that the lien is a judicial lien that impairs Mr. Sanderfoot's homestead exemption." [6] *In re Sanderfoot*, 92 B.R. 802, 803 (E.D.Wis.1988). The court rejected the reasoning of *Boyd* and held that the divorce decree both extinguished all preexisting interests and simultaneously created new interests. Accordingly, the bankruptcy court's order denying Mr. Sanderfoot's motion to avoid the lien under section 522(f)(1) was reversed. Ms. Farrey filed a timely notice of appeal on November 3, 1988.

## II

## ANALYSIS

### A. *Standard of review*

The issue before the court is whether 11 U.S.C. § 522(f)(1) allows a bankruptcy debt-

or to avoid a lien against his homestead where the lien was granted to the debtor's former spouse under a divorce decree. There are no questions of fact. The issue is one of law, subject to *de novo* review. *See Park Terrace Townhouses v. Wilds*, 852 F.2d 1019, 1021 (7th Cir.1988); *In re Evanston Motor Co., Inc.*, 735 F.2d 1029, 1031 (7th Cir.1984).

### B. *Lien avoidance under 11 U.S.C. § 522(f)*

The inquiry in this case is the proper interpretation of section 522(f)(1). Though the issue seems straightforward, courts have had "some difficulty in defining precisely the interest of an ex-spouse arising out of a property settlement made during a divorce proceeding." *In re Donahue*, 862 F.2d 259, 262 (10th Cir.1988). The issue is one of first impression in the Seventh Circuit, though this "difficulty" has led to a split among the courts of appeals that have examined the statute. *Compare In re Borman*, 886 F.2d 273 (10th Cir.1989) *and Boyd v. Robinson*, 741 F.2d 1112 (8th Cir. 1984) *with In re Pederson*, 875 F.2d 781 (9th Cir.1989) *and Maus v. Maus*, 837 F.2d 935 (10th Cir.1988). The bankruptcy and district courts that have "wade[d] into waters muddied before [them]" are similarly divided. *In re Rittenhouse*, 103 B.R. 250, 252 (D.Kan.1989).

■ Interpretation of a statute must begin with the statute's plain language. *United States v. Ron Pair Enterprises, Inc.*, — U.S. ——, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *United States v. Rosado*, 866 F.2d 967, 969 (7th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989). In this case, the bankruptcy code defines most of the terms rele-

---

**5.** Ms. Farrey also objected to Mr. Sanderfoot's valuation of assets in the bankruptcy proceeding and argued that he was bound by the divorce court's value determinations. The divorce court had valued the marital home at $104,000, but in his bankruptcy filings four months after entry of the divorce decree Mr. Sanderfoot listed its value at $82,750. *See In re Sanderfoot*, 83 B.R. 564, 565–66 (Bankr.E.D.Wis.1988). The bankruptcy court concluded that because Ms. Far-

rey's lien could not be avoided, it was "unnecessary for a finding of value to be made at this time." *Id.* at 565.

**6.** However, the district court neither determined the value of the residence nor the extent to which Ms. Farrey's lien impaired Mr. Sanderfoot's exemption.

vant to our analysis of the nature of Ms. Farrey's lien. A "lien" is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(33). The parties do not contest the conclusion that Ms. Farrey has a lien as that term is defined. Rather, their disagreement arises from contrary interpretations of the application of section 522(f)(1), which allows the debtor to avoid liens if three requirements are met:

(1) The lien is fixed on an interest of the debtor in property;

(2) The lien impairs an exemption to which the debtor would otherwise be entitled; and

(3) The lien is a judicial lien.

*In re Sanderfoot*, 92 B.R. at 803 (citing *In re Hart*, 50 B.R. 956, 960 (Bankr.D.Nev. 1985)). We shall analyze each of these requirements.

1. Is the lien fixed on an interest of the debtor?

Ms. Farrey first claims that her lien does not attach to Mr. Sanderfoot's interest in his homestead. The bankruptcy court agreed with this position and found that Mr. Sanderfoot could not avoid the lien because it did not attach to his interest in the property. 83 B.R. at 568–70. The district court rejected that argument, as has the only other Wisconsin court that has examined this issue. *See In re Duncan*, 85 B.R. 80, 82 (W.D.Wis.1988) (discussed *infra* ).

The Tenth Circuit noted in *Maus v. Maus*, 837 F.2d 935, 939 (10th Cir.1988) that "[m]any courts have struggled to find theories under which a lien to enforce a property settlement survives bankruptcy." The "survival" theory that numerous courts have relied upon, including the bankruptcy court in this case, was first articu-

lated in *Boyd v. Robinson*, 741 F.2d 1112 (8th Cir.1984). In *Boyd*, the debtor commenced a bankruptcy action seeking to avoid her ex-husband's lien, acquired during the parties' divorce proceeding, on their former homestead. The Eighth Circuit held that liens granted by a divorce decree do not attach to an interest of the debtor, but rather protect a preexisting property right of the non-debtor spouse in the marital home arising under state law during the marriage. *Id.* at 1114–15. The court determined that applicable Minnesota law recognized the non-debtor spouse's property interest in a homestead acquired during the marriage with marital assets or assets contributed by that spouse. *Id.* at 1114. Since *Boyd*, several courts similarly have recognized the non-debtor spouse's preexisting rights in the marital home and refused to let the debtor avoid the lien.[7]

Other courts have declined to follow the Eighth Circuit's rationale. In *In re Pederson*, 875 F.2d 781 (9th Cir.1989), a split panel of the Ninth Circuit expressly repudiated *Boyd* and determined that a lien granted in a divorce proceeding to a non-debtor spouse against the debtor's property was subject to avoidance. The *Pederson* court rejected the Eighth Circuit's analysis that the debtor's lien attached to a preexisting interest in the property. In the Ninth Circuit's view, the state court awarded the homestead to the non-debtor spouse before imposing the lien. *Id.* at 783. The debtor spouse had an interest in the property prior to the order of dissolution, but

"that is all it was—pre-existing. [The non-debtor's] prior interest in the house was dissolved. In its place, the court gave him a debt . . . enforceable by a lien on the house. What had been a property interest became simply collateral for a debt. Since the house was simultaneous-

---

7. *See, e.g., In re Rittenhouse*, 103 B.R. 250 (D.Kan.1989) (divorce judgment did not terminate non-debtor spouse's interest, but created a lien to secure that interest; debtor spouse thus received interest in the homestead subject to the lien); *Zachary v. Zachary*, 99 B.R. 916, 919 (S.D.Ind.1989) (lien attaches at same time as title is transferred; debtor thus acquired property interest subject to lien and lien did not attach to an interest of the debtor); *In re Hart*, 50 B.R.

956, 961 (Bankr.D.Nev.1985) (lien did not attach because it was created simultaneously with debtor's interest in the homestead where property in effect was conveyed subject to a lien to secure payment of non-debtor spouse's settlement); *In re Seablom*, 45 B.R. 445, 451 (Bankr. D.N.D.1984) (lien created by divorce decree protected non-debtor spouse's preexisting property interest and did not attach to an interest of the debtor).

ly vested solely in [the debtor spouse], the lien *must* have attached to her interest in the house, for no one else possessed any ownership interest in the house."

*Id.* (quoting *Boyd*, 741 F.2d at 1115 (Ross, J., dissenting) (emphasis in original)).

The Tenth Circuit also rejected the reasoning of *Boyd* in *Maus v. Maus*, 837 F.2d 935 (10th Cir.1988).[8] There, a settlement agreement incorporated in the divorce judgment awarded the debtor the marital home subject to a lien[9] in favor of the non-debtor spouse. Because the state court awarded the debtor sole title to the home, "free and clear of any and all claims" of the non-debtor spouse, the lien[10] attached solely to the debtor's interest in the residence. *Id.* at 937, 939. The court further noted that the "convoluted theory" espoused in *Boyd* ignored the fact that "the decree gives one party title outright and that is the interest to which the lien attaches." *Id.* at 939.

Several bankruptcy and district courts have followed the rationale in *Pederson*,[11] but only one other case has focused on the avoidability of a lien created by a Wisconsin divorce court. In *In re Duncan*, 85 B.R. 80 (W.D.Wis.1988), the debtor and his wife lived on a farm owned by the debtor prior to their marriage. When the couple divorced, the debtor received the farm and the wife received a lien upon the farm to secure a cash settlement. As in the instant case, the lien was created in and by the divorce decree. *Id.* at 81. The court determined that the bankruptcy court's decision

to uphold the lien directly conflicted with "the unambiguous language" of section 522 and therefore reversed. *Id.* at 82. The "plain intent" of the divorce decree, which granted a lien upon the entire farm, was to declare the debtor the sole owner of the property, subject to his ex-wife's lien. Whether the non-debtor spouse had a preexisting interest in the farm was thus "simply irrelevant. It is plain that whatever interest she had was extinguished by the divorce decree...." *Id.* The court thus rejected *Boyd* and relied on *Maus, Pederson*, and the dissent in *Boyd* to conclude that a lien created by a divorce decree to secure payment of a property settlement is avoidable. *Id.* at 82–83.

■ The facts in the case before us correspond to those in *Pederson*. Mr. Sanderfoot was awarded the marital home under the divorce decree subject to Ms. Farrey's lien. Whether she had prior rights in the residence under Wisconsin law is, in the words of the Western District of Wisconsin, "simply irrelevant." *In re Duncan*, 85 B.R. at 82. Any preexisting interest Ms. Farrey had in the homestead was dissolved in the divorce proceeding. Her new interest, created in the dissolution order and evidenced by her lien, attached to Mr. Sanderfoot's interest in the property. Like the Ninth Circuit, we therefore respectfully decline to follow *Boyd*. We conclude that *Pederson* and its progeny are better reasoned and faithful to the plain language of section 522(f).[12] Consequently, we con-

---

**8.** *But see In re Borman*, 886 F.2d 273 (10th Cir.1989) and *In re Donahue*, 862 F.2d 259 (10th Cir.1988), discussed *infra* in subpart B, section 3, where the Tenth Circuit limited the holding of *Maus*.

**9.** The *Maus* court, while not explicitly deciding whether a lien technically had been created under Kansas law, held that any lien created was a judicial lien within the meaning of 11 U.S.C. § 101(32). 837 F.2d at 938–39. Assuming that such a lien was created as a matter of state law, the court proceeded to determine whether it attached to the debtor's interest in the property within the meaning of section 522(f)(1).

**10.** *See supra* note 9.

**11.** *See, e.g., In re Boggess*, 105 B.R. 470, 474–75 (Bankr.S.D.Ill.1989) (where debtor was awarded

marital residence "free and clear of any interest of the [non-debtor spouse]," lien attached and was avoidable); *In re Conway*, 93 B.R. 731, 733 (Bankr.N.D.Okla.1988) (without analysis, the court concluded that the lien was fixed on the debtor's property); *In re Alvarado*, 92 B.R. 923, 926–27 (Bankr.D.Kan.1988) (court rejected the "preexisting interest" theory and held that lien attached to debtor's property).

**12.** Although mindful of our responsibility to review the issue *de novo*, "we accord great weight to the determination of the district court sitting in the state whose law is to be applied." *PPG Indus., Inc. v. Russell*, 887 F.2d 820, 823 (7th Cir.1989). To the extent Wisconsin family law is relevant to the interpretation of the divorce decree and lien, the Eastern and Western districts of Wisconsin, in this case and *In re Dun-*

clude that Ms. Farrey's lien attached to Mr. Sanderfoot's interest in the homestead property.

### 2. Does the lien impair an exemption to which debtor is entitled?

The parties do not dispute that the real estate at issue constitutes Mr. Sanderfoot's homestead under Wis.Stat. § 815.20 and that he thus was entitled to exempt the property from his bankruptcy estate. *See* Appellant's Br. at 6. The question is whether Ms. Farrey's lien impairs that exemption. Neither the parties nor the courts below focus on this aspect of the lien avoidance statute. With little discussion, the bankruptcy court determined that the lien impaired Mr. Sanderfoot's homestead exemption, 83 B.R. at 566–67, and the district court stated that the parties did not dispute the issue, 92 B.R. at 803. Indeed, Ms. Farrey did not address this point in either her brief or at oral argument. Accordingly, we conclude that any challenge has been waived and affirm the determination that the lien impairs the debtor's interest in his homestead property. We must leave it to the bankruptcy court to determine in the first instance the value of Mr. Sanderfoot's homestead, and thus the exemption amount to which he is entitled.[13]

### 3. Is the lien a judicial lien?

Under the Bankruptcy Code, a judicial lien is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(32). Applying the plain language of the statute, there can be no doubt that Ms. Farrey's lien, granted by the Wisconsin Circuit Court for Outagamie County, was obtained by "legal proceedings." The bankruptcy court, although concluding that Ms. Farrey's lien could not be avoided, yet conceded that the lien "is without ques-

tion a type of judicial lien." 83 B.R. at 566. The district court similarly determined that "the lien is a judicial lien that impairs Mr. Sanderfoot's homestead exemption." 92 B.R. at 803. Ms. Farrey nonetheless maintains that the lien imposed by the divorce court is not a judicial lien. Therefore, we turn to an examination of her argument.

The same year the Tenth Circuit handed down *Maus v. Maus*, 837 F.2d 935 (10th Cir.1988), that court decided *In re Donahue*, 862 F.2d 259 (10th Cir.1988). The dispute in the *Donahue* case centered around the terms of a divorce decree pursuant to which the debtor received the marital residence "subject to" a money judgment awarded to the non-debtor spouse. 862 F.2d at 260. The *Donahue* panel determined that the decree created an equitable lien. *Id.* at 262–63. The court distinguished *Maus:*

> The critical difference between this case and *Maus* is that the terms of the divorce decree in *Maus* explicitly awarded the property to the debtor spouse "free and clear" of any claims of the nondebtor spouse. In our case, by contrast, the divorce decree itself clearly contemplated the creation of a lien or security interest of some kind in favor of [the non-debtor spouse] and against the Property.

*Id.* at 265.

The Tenth Circuit subsequently relied on *In re Donahue* to limit the holding of *Maus* and declare that a lien in favor of the debtor's former spouse against the debtor's homestead could not be avoided. *In re Borman*, 886 F.2d 273 (10th Cir.1989). The panel explicitly stated that *Maus* was "limited to the issue of whether a money judgment awarded in a divorce decree can give rise to a lien on homestead property when the divorce decree itself does not specifically create a lien." *Id.* at 274. Because the debtor in *Borman* would have been unjustly enriched if allowed to avoid a lien cre-

---

*can,* respectively, have interpreted similar divorce decrees and determined that the liens created in each attached to and were "fixed on an interest of the debtor." *See* 11 U.S.C. § 522(f).

**13.** The divorce court valued the homestead at $104,000. Ms. Farrey objected to Mr. Sanderfoot's valuation of $82,750 in his Chapter 7

petition. Neither the bankruptcy nor district court settled this issue. However, they are not bound by the valuations determined in the divorce proceedings. *See In re Boggess,* 105 B.R. 470, 474 (Bankr.S.D.Ill.1989); *In re Sanderfoot,* 83 B.R. 564, 570–71 (Bankr.E.D.Wis.1988); 3 *Collier on Bankruptcy* § 521.08[2] (15th ed. 1989).

ated by the dissolution order, the court imposed an equitable lien and refused to permit its avoidance. *Id.*

While other courts have echoed a similar rationale, [14] such reasoning is clearly incompatible with the reasoning of *In re Pederson* that rejected as "implausible and unsupported by the language of the Code" theories advanced by bankruptcy courts for "salvaging liens enforcing property settlements." 875 F.2d at 783 n. 4.[15] Finally, the dissent in *Boyd* concluded that the state court gave the nondebtor spouse a judicial lien, as opposed to an equitable mortgage or security interest, in the debtor's residence.[16] 741 F.2d 1112, 1115 and

n. 1 (8th Cir.1984) (Ross, J., dissenting). Judge Ross noted that the lien granted by the divorce court fit "precisely" within the definition in section 101(32); the lien was obtained by judgment because the non-debtor spouse had no interest or lien on the house until the divorce court's order. *Id.* at 1115–16. Moreover, the lien was not created by an agreement, so did not constitute a security interest. Nor was it created by contract or conveyance. It was imposed by the court, so could not be termed a mortgage. *Id.* at 1116.[17]

■ We conclude that, whether liens of the type at issue in this case are called

**14.** In *In re Davis,* 96 B.R. 1021, 1022 (M.D.Fla. 1989), for example, the court concluded that the final judgment entered by the divorce court recognized an already existing equitable lien. *See also Zachary v. Zachary,* 99 B.R. 916, 920 (S.D.Ind.1989) (lien was not one "obtained by judgment" because lien merely recognized preexisting property right in homestead); *In re Warren,* 91 B.R. 930, 931 (Bankr.D.Or.1988) (lien which simply recognizes preexisting interest in marital property is not judicial lien). Similarly, in *In re Worth,* 100 B.R. 834, 840 (Bankr.N.D.Tex.1989), the court examined Texas law and concluded that a lien imposed by the divorce court was an unavoidable vendor's lien. *See also In re Boyd,* 93 B.R. 538, 539–40 (Bankr. S.D.Tex.1988) (non-debtor spouse held valid implied vendor's lien against the homestead where divorce decree awarded home to debtor subject to second lien in favor of non-debtor spouse; § 522(f) question not reached because debtor did not seek to avoid lien); *In re Hart,* 50 B.R. 956, 960–61 (Bankr.D.Nev.1985) (non-debtor spouse had unavoidable equitable lien securing his equity in debtor's property); *In re Thomas,* 32 B.R. 11, 12 (Bankr.D.Or.1983) (lien imposed by dissolution decree intending to effect a division of property is not avoidable judicial lien). An analogous theory is that the divorce court created a security interest or mortgage rather than an avoidable judicial lien. *See In re McCormmach,* 111 B.R. 330 (Bankr.D.Or.1990) (consensual mortgage or homestead incorporated into divorce decree was not a judicial lien); *In re Conway,* 93 B.R. 731, 733–34 (Bankr.N.D. Okla.1988) (lien conferred in divorce judgment "is more in the nature of a security interest or a mortgage and thus is not a mere judicial lien"); *Wozniak v. Wozniak,* 121 Wis.2d 330, 359 N.W.2d 147 (Wis.1984) (proceeding under state law rather than the bankruptcy code, court concluded that divorce judge clearly intended to create security interest).

**15.** *In re Godfrey,* 102 B.R. 769, 773 (Bankr. 9th Cir.1989), relying on *In re Pederson,* concluded that a lien on real property arising from mar-

riage dissolution is an avoidable judicial lien under § 522(f)(1).

**16.** The majority did not consider whether the non-debtor spouse had a judicial lien.

**17.** Following the dissent in *Boyd,* the Western District of Wisconsin also found "unpersuasive" the argument that the divorce court awarded the non-debtor spouse an equitable mortgage or other non-judicial lien. *In re Duncan,* 85 B.R. 80, 82–83 (W.D.Wis.1988). Because the lien in *Duncan* was created in a disputed divorce proceeding, and not by agreement, it could not be a security interest as that term is defined by 11 U.S.C. § 101(45). *Id.* at 83. Moreover, "[t]he fact that the Wisconsin state court [in *Wozniak v. Wozniak,* 121 Wis.2d 330, 359 N.W.2d 147, 150 (Wis.1984)] has held that such a lien is to be foreclosed under the mortgage statutes is irrelevant," given the resulting chaos should state courts be permitted to alter what would clearly be a judicial lien by terming it an "'equitable mortgage.'" *Id.* (quoting *In re Boyd,* 741 F.2d at 1115 (Ross, J., dissenting)).

Bankruptcy courts have repeated this reasoning in their decisions. Under the clear language of the Code, the court in *In re Boggess,* 105 B.R. 470, 474–75 (Bankr.S.D.Ill.1989), held that the lien arising from the divorce proceeding fit the statutory definition of "judicial lien." The court in *In re Brothers,* 100 B.R. 565, 567–68 (Bankr. N.D.Ala.1989), a case factually comparable to the one before us, also concluded that the non-debtor spouse possessed an avoidable judicial lien as defined by the unambiguous terms of the Code. *See also In re Alvarado,* 92 B.R. 923, 925 (Bankr.D.Kan.1988) (lien created by divorce decree is judicial lien, not "consensual" lien). In yet another case analogous to the one before us, a Florida bankruptcy court declared that "[t]here is no question that an equitable lien is 'a judicial lien' and, therefore, within the scope of § 522(f)(1)." *In re Dudley,* 68 B.R. 426, 427 (Bankr.S.D.Fla.1986).

equitable liens or vendor's liens or security interests, they still are "judicial liens" within the definition of section 101(32) and, consequently, are within the embrace of section 522(f)(1). The federal definition of "judicial lien," 11 U.S.C. § 101(32), is unambiguous and must control in this instance. *See McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945). Like the court in *In re Boggess*, we find the rationale employed in *Boyd* and its progeny "strained and instead adopt the position of the *Pederson* line of cases that the Code provisions must be given their plain meaning despite the seemingly inequitable results in a divorce setting." 105 B.R. 470, 474 (Bankr.S.D.Ill. 1989). "Regardless of its own perceptions of fairness, [this] Court must give effect to the policy decisions embodied in the express language of Code provisions," *id.* at 475, for as Judge Ross concluded in his dissent, "[i]f state law were allowed to vary what would otherwise be a judicial lien by merely calling the interest an 'equitable mortgage,' havoc would result." *In re Boyd*, 741 F.2d at 1115. In this case, the lien imposed by the Outagamie County circuit court is a judicial lien as defined in the Code. It was created by a judgment and it is a "charge against" the property awarded to Mr. Sanderfoot and is designed to secure payment of the $29,000 debt owed to Ms. Farrey. We thus conclude that the definition of § 101(32) is satisfied and the lien is in fact a judicial lien.

### Conclusion

There are unquestionably a number of opposing interests involved in cases like this one. The court in *In re Worth*, 100 B.R. 834, 837 (Bankr.N.D.Tex.1989), noted that it is not uncommon for divorce courts to award exempt property to Spouse A and create a lien on the property in favor of Spouse B. However,

> [i]f Spouse A subsequently files for bankruptcy and seeks to avoid the lien, bankruptcy courts are presented with substantial legal and policy conflicts. On one side stands the Congressional mandate that debts for property division are dischargeable in bankruptcy, and judicial

liens on exempt property are avoidable pursuant to § 522(f)(1). Ranged on the opposite side are the federal judiciary's respect for the judgments of state courts, the feeling that a debtor (although deserving a fresh start) should not profit from a bankruptcy proceeding, and the concern that Spouse B's future earning ability may not be as great as that of Spouse A.

*Id.* (footnote omitted). The court concluded that "[w]hen faced with these disparate issues, it is not surprising that courts have reached different conclusions." *Id.*

We recognize the policy arguments against avoidance, but emphasize that it is not for the courts to make policy: "permitting avoidance of this lien" may be "a harsh result," but "[t]his type of decision is for Congress. Once Congress has decided, its judgment should be respected." *In re Boyd*, 741 F.2d 1112, 1116 (8th Cir.1984) (Ross, J., dissenting). Ms. Farrey urges this court to render a convoluted reading of section 522(f)(1), given the claimed inequitable result if the statute is read literally. While we might have struck a different balance than did Congress, we are not free to disregard the clear legislative judgment that debtors may avoid judicial liens of the type at issue. Perhaps Congress should reexamine the statute, but until it is amended, this court is constrained to apply the law as plainly written. We therefore decline to follow one of the various routes taken in an effort to prevent "injustice" suggested by *Boyd* and its progeny because we agree that "the policy considerations at issue have been weighed by Congress and embodied in the language of the Bankruptcy Act. It is the prerogative of Congress and not of the courts to adjust that balance." *Maus v. Maus*, 837 F.2d 935, 940 (10th Cir.1988). Because it is clear from the face of the statute that Ms. Farrey has a judicial lien that impairs Mr. Sanderfoot's homestead exemption, we conclude that the lien is avoidable under section 522(f)(1).

Ms. Farrey's lien is fixed on Mr. Sanderfoot's interest in his home, impairs an otherwise proper homestead exemption, and

was obtained through the judicial process. All the elements of section 522(f)(1) are satisfied, and we therefore affirm the district court's determination that the lien is avoidable.

AFFIRMED.

POSNER, Circuit Judge, dissenting.

The fact that a judicial decision offends the moral sense of laymen does not prove the decision wrong. Institutional or systemic considerations, themselves morally significant, but invisible to the laity, may outweigh the tug of simple justice. But they do not do so here.

The divorce court found that the net value of the Sanderfoots' marital property, consisting primarily of the couple's home, was $58,000 and that the property should be split 50–50. No one questions that this is the proper division. To effect the split, the court awarded to the husband the couple's home, which had been bought during the marriage and was jointly owned, and ordered him to pay $29,000 in cash to the wife. To enforce this order, the court gave her a lien on the house. The husband did not pay his wife a cent (nor did he comply with any other order of the divorce court, including an order to provide child support), but instead declared bankruptcy, claimed a homestead exemption for the house, and filed a motion under 11 U.S.C. § 522(f) to avoid the wife's lien—a tactic designed to nullify (or perhaps to complete the nullification of) the divorce decree and give the husband all rather than half the marital property. Today we place the crown of success on this vicious scheme. The Bankruptcy Code as liberalized in 1978 is widely criticized as making bankruptcy an ordinary tool of business planning, but after today it will also be criticized as a tool by which bounders defraud their spouses.

This result, a perversion of bankruptcy law, is a product neither of judicial hardheartedness nor of legislative ineptitude, but of judicial misunderstanding of the lien-avoidance provision of the Bankruptcy Code. Section 522(f)(1) allows the debtor (i.e., the bankrupt) to avoid a judicial lien that impairs an exemption. The purpose—

as appears unmistakably from legislative history the purport and significance of which are unquestioned—is to thwart unsecured creditors who, sensing impending bankruptcy, rush into court to obtain liens on exempt property, thus frustrating the purpose of the exemptions. As explained in H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977), the lien-avoidance provision "allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions." That is not what happened here. No creditor beat the debtor into court. The lien was created by a court, it is true, but not to enable a creditor to defeat his debtor's household exemption; it was done to protect a spouse's preexisting property rights.

Of course often the language of a statute carries beyond the statutory purpose, and when that happens subtle issues of interpretation arise. This may seem to be such a case, because the lien was created by a court and was therefore a "judicial lien." But the statute does not say that the bankrupt may avoid a judicial lien to the extent that it impairs an exemption; it says that the bankrupt may avoid "the fixing of" such a lien "on an interest of the debtor in property." The debtor must have the interest at the time the court places the lien on it. That condition is not satisfied here. Before the divorce, the Sanderfoots owned their home jointly. Wis.Stat. §§ 766.31, 767.255; *Krueger v. Wisconsin Department of Revenue*, 124 Wis.2d 453, 460, 369 N.W.2d 691, 694–95 (1985). Mr. Sanderfoot did not own it. Certainly he did not own it free and clear of his wife's interest, which was equal to his own. He could not have sold it without her consent, whether or not her name appeared on the title papers. Wis.Stat. § 706.09(1)(e). The divorce court did not extinguish her interest, but instead transformed it from that of a co-owner to that of a mortgagee. *Wozniak v. Wozniak*, 121 Wis.2d 330, 359 N.W.2d 147 (1984).

It is settled in the nonfamily context that a debtor cannot avoid a lien on an interest acquired after the lien attached. *In re McCormick,* 18 B.R. 911 (Bankr.W.D.Pa. 1982); *In re Stephens,* 15 B.R. 485 (Bankr. W.D.N.C.1981). The principle should be the same if the interest and lien arise from the same transaction, here a divorce decree that gave the entire property to Sanderfoot subject to a lien in favor of his wife. It cannot be argued that enforcing the lien would diminish the amount available to creditors who extended credit to the debtor before the lien attached, or to the debtor himself claiming an exemption. Before the wife acquired her lien, Sanderfoot had only an undivided one-half interest in the property. Enforcing the wife's lien cannot cut down on the size of the bankrupt estate as it existed before the lien attached.

I am at a loss to understand why we should strain the language and ignore the purpose of the lien-avoidance statute in order to achieve a result that does not promote, but instead denies, simple justice—layman's justice. I do not expect an argument about this characterization of our result, because at oral argument the husband's lawyer admitted that his client's action had subverted the purpose of the divorce decree. The lawyer added, however, that this did not matter because (in his words) "bankruptcy is inequitable." I had thought bankruptcy a branch rather than a rejection of equity. In so saying I do not endorse a free-wheeling judicial discretion to disregard either the Bankruptcy Code or the state-law entitlements that the Code is largely concerned with enforcing. "[E]quity may supplement, but may never supersede, the [Bankruptcy] Act." *Marin v. England,* 385 U.S. 99, 110, 87 S.Ct. 274, 280, 17 L.Ed.2d 197 (1966) (Harlan, J., dissenting). See also *Boston & Maine Corp. v. Chicago Pacific Corp.,* 785 F.2d 562, 566 (7th Cir.1986); *Levit v. Ingersoll Rand Financial Corp.,* 874 F.2d 1186, 1197–98 (7th Cir.1989). But when a debtor uses the Code to steal from his former wife we should not lightly conclude that the Code, properly read, commands such a result.

I acknowledged at the outset of this opinion, and I repeat, that superficially unjust results are sometimes made just by institutional and systemic concerns, such as the desirability of simple rules. If this were not so, there would never be a tension between legal justice and substantive justice. But there is no such tension *here.* Mrs. Sanderfoot is not asking us to disregard the purpose of Congress, but to fulfill it by adhering to the precise contours of the lien-avoidance section. She is asking us not to disregard Congress's words, but to apply them. She is asking not for a complex rule or vague standard but for a straightforward distinction between a judicial lien on the bankrupt's property and a judicial lien intended to secure a spouse's preexisting interest in marital property. We could do justice here without deforming the Bankruptcy Code.

Precedent does not compel the court's result. Far from it. The position I urge here was adopted by the Eighth Circuit in *Boyd v. Robinson,* 741 F.2d 1112 (8th Cir. 1984), as it has been by most bankruptcy judges. *In re Thomas,* 32 B.R. 11 (Bankr. D.Ore.1983); *In re Williams,* 38 B.R. 224 (Bankr.N.D.Okla.1984); *In re Scott,* 12 B.R. 613 (Bankr.W.D.Okla.1981). The Tenth Circuit rejected it in *Maus v. Maus,* 837 F.2d 935 (10th Cir.1988). But *In re Donahue,* 862 F.2d 259 (10th Cir.1988), decided a few months later, and *In re Borman,* 886 F.2d 273 (10th Cir.1989), repudiated *Maus* in the guise of distinguishing it. In *In re Pederson,* 875 F.2d 781 (9th Cir. 1989), the Ninth Circuit lined up with *Maus.* It reasoned (as had the dissenting judge in *Boyd* ) that when the divorce court awarded the home to one spouse, it dissolved the other spouse's interest and created in that spouse a new interest, a judicial lien the fixing of which the bankrupt was entitled to avoid to the extent it impaired an exemption. I do not doubt that the decree can be so characterized, but I disagree that the characterization supports a conclusion that the spouse's lien is avoidable. The lien in our case was created in the same document—the divorce decree—that gave the husband his interest in the property. The lien qualified that interest from the start. There was no instant at

which Sanderfoot owned the property free and clear of the wife's interest. He seeks a fresh start with someone else's property.

We should go with the Eighth and Tenth Circuits. We should reverse.